# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP1196

Complete Title of Case:

> **WISCONSIN STATE JOURNAL, JONATHAN ANDERSON, THE ASSOCIATED PRESS, THE CAPITAL TIMES AND MILWAUKEE JOURNAL SENTINEL,**
>
> > **PLAINTIFFS-RESPONDENTS,**
>
> **V.**
>
> **EDWARD A. BLAZEL, IN HIS OFFICIAL CAPACITY AS ASSEMBLY CHIEF CLERK AND WISCONSIN STATE ASSEMBLY,**
>
> > **DEFENDANTS-APPELLANTS.**

| | |
|---|---|
| Opinion Filed: | March 9, 2023 |
| Submitted on Briefs: | January 20, 2022 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ. |
| Concurred/Dissented: | Fitzpatrick, J. |
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Andrew T. Phillips, Jacob J. Curtis,* and *Matthew J. Thome* of *Attolles Law, s.c.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Christa Westerberg* and *Aaron Dumas* of *Pines Bach LLP,* Madison, and *Thomas Claire Kamenick* of *Wisconsin Transparency Project* and *Kamenick Law Office, LLC*, Port Washington. |

**2023 WI App 18**

<table>
<tr><td>

**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 9, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

</td><td>

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

</td></tr>
</table>

<table>
<tr><td>

**Appeal No.    2021AP1196**

**STATE OF WISCONSIN**

</td><td>

Cir. Ct. No.  2020CV764

**IN COURT OF APPEALS**

</td></tr>
</table>

WISCONSIN STATE JOURNAL, JONATHAN ANDERSON, THE ASSOCIATED PRESS, THE CAPITAL TIMES, AND MILWAUKEE JOURNAL SENTINEL,

    PLAINTIFFS-RESPONDENTS,

  V.

EDWARD A. BLAZEL, IN HIS OFFICIAL CAPACITY AS ASSEMBLY CHIEF CLERK, AND WISCONSIN STATE ASSEMBLY,

    DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Dane County: JUAN B. COLÁS, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

¶1    KLOPPENBURG, J.    In this public records case, the Wisconsin State Assembly, through its custodian, Chief Clerk Edward Blazel (collectively, "the Assembly"), initially denied outright requests for public records relating to an allegation by an Assembly employee that the employee had been sexually harassed by then-Representative Staush Gruszynski and the Assembly's investigation of the complaint.  The Assembly stated that it applied the public records balancing test and determined that the public interests in non-release outweighed "any public interest" in release.  Based on this initial response, the requesters—the Wisconsin State Journal, Jonathan Anderson, The Associated Press, The Capital Times, and Milwaukee Journal Sentinel (collectively, "the newspapers")—filed a complaint in the circuit court seeking relief under WIS. STAT. § 19.31.[1]  The newspapers sought an order declaring that the Assembly violated Wisconsin's public records law, a mandamus order directing the Assembly to release the requested records, and an award of attorney fees and costs and statutory damages (collectively, "attorney fees").[2]  Several months later, after the employee (while remaining anonymous) shared publicly through a journalist details of the alleged sexual harassment incident, the Assembly released redacted versions of the requested records, stating that its balancing of the public interests no longer favored non-release but that the redactions were needed for various reasons.  The newspapers filed an amended

_____

[1] Wisconsin's public records law is set forth in WIS. STAT. §§ 19.31-19.39 (2021-22). Although the parties at times refer to this statute as the "open records law," we follow our supreme court in using the term "'public records law' in order to avoid confusion with the open meetings law." *Journal Times v. Police & Fire Comm'rs Bd.*, 2015 WI 56, ¶2 n.4, 362 Wis. 2d 577, 866 N.W.2d 563.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The newspapers also sought punitive damages but subsequently stipulated that they would no longer seek punitive damages.  In supplemental appellate briefing, the newspapers assert that they "have not built a record to establish punitive damages yet, but would and could" do so on remand in the remedy phase.  We state no opinion on the issue of potential punitive damages.

complaint alleging two causes of action: (1) the Assembly violated the public records law when it initially denied outright the records requests; and (2) the Assembly separately violated the public records law when it released only redacted versions of the requested records eight months after all responsive records were requested. The newspapers sought similar relief as in their initial complaint.

¶2 Addressing cross-motions for summary judgment that were submitted after the amended complaint was filed, the circuit court concluded that the Assembly improperly applied the balancing test in violation of the public records law in two respects: (1) when it initially declined to release the requested records; and (2) when it later released the requested records with redactions. The court also determined that the newspapers are entitled to attorney fees for both violations. The Assembly appeals both rulings on the merits and challenges the award of attorney fees.

¶3 As to the merits and the issue of attorney fees relating to the newspapers' first cause of action challenging the Assembly's initial outright denial of the newspapers' records requests, we first reject the Assembly's argument that, under *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263, this cause of action is moot and, if not, no exceptions to mootness apply. We next conclude that the Assembly violated the public records law when it initially denied outright the records requests because its purported justifications did not sufficiently demonstrate that the public interest in non-release outweighed the public interest in release. Because that determination causes a "change in the parties' legal relationship," *id.*, ¶3, we also conclude that the newspapers are entitled to attorney fees for their challenge to the Assembly's initial outright denial of their records requests.

¶4    As to the merits and the issue of attorney fees relating to the newspapers' second cause of action challenging the redactions, we conclude that the Assembly violated the public records law with respect to all but one redaction, and that the newspapers are, consequently, entitled to attorney fees on their challenge to the improper redactions.

¶5    Accordingly, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.

## BACKGROUND

¶6    In November 2019, an Assembly employee filed a formal complaint alleging that Gruszynski sexually harassed her after work hours at a non-workplace location.[3]  The Legislative Human Resources Office conducted an investigation and found the allegations to be substantiated and that Gruszynski had violated policies contained in the Assembly Policy Manual.  That office also required certain remedial action, including attendance at Anti-Harassment Training and "remedial actions as determined by Rep. Gruszynski's leadership."

¶7    On December 19, 2019, the "Assembly Democratic Leadership" issued the following statement:

> This week, the Legislative Human Resources Office (LHRO) completed a Formal Complaint Resolution process into a complaint that Rep. Staush Gruszynski verbally

---

[3]  Certain portions of documents in the circuit court record and the parties' appellate briefs and appendices have been redacted, and the unredacted versions of all of those documents, briefs, and appendices have been filed under seal.  The facts to which we refer in this opinion are those facts that were disclosed to the public at the time of the newspapers' first records requests in December 2019, and which have not been redacted in the record.

We will refer to the Assembly employee who filed the complaint as "the complainant" to protect her identity, which to our knowledge has not been disclosed publicly and was redacted without objection by the newspapers, and to distinguish her from other Assembly employees.

> sexually harassed a legislative employee while in an offsite location after work hours. This investigation found the complaint to be substantiated, and in violation of the policies laid out in the Wisconsin State Assembly Policy Manual.
>
> … In recognition of the seriousness of this substantiated investigation, we have immediately stripped Rep. Gruszynski of his committee assignments. Rep. Gruszynski will no longer be caucusing with the Assembly Democrats, and should resign.

¶8 On December 19 and 20, 2019, the newspapers submitted public records requests to the Assembly for records relating to the complaint and investigation referenced in the leadership statement. On December 20, 2019, in response to the requests, the Assembly did not release any responsive public records. Instead, the Assembly provided to the newspapers a document titled "High Level Summary for S.G. Complaint" (generally, "the Summary"). The Summary stated, as discussed in more detail below, that the Assembly had applied the "public records balancing test and determined that the public interest in treating employee internal complaints as confidentially as possible and respecting the privacy and dignity of the complainant/witnesses outweighed any public interest in disclosing" the requested records.

¶9 The Summary then set forth the following summary of facts as its purported formal response to the records requests:

> In October 2019, a legislative employee filed a formal complaint with the Legislative Human Resources Office (LHRO) against Representative Staush Gruszynski, alleging that Rep. Gruszynski verbally sexually harassed the employee, while at an offsite location/after work hours, in violation of the Assembly Policy Manual. The LHRO investigated the employee's complaint and determined that the employee's allegations were substantiated. As a result of the substantiated findings, the following remedial actions were required: 1.) Remedial actions as determined by Rep. Gruszynski's leadership; 2) Rep. Gruszynski will attend Anti-Harassment Training with the LHRO; and, 3) Any

further incidents of harassment/discrimination/retaliation will not be tolerated.

¶10 The newspapers filed this action in the circuit court in March 2020, seeking an order declaring that the Assembly violated the public records law in failing to release the requested records, a mandamus order directing the Assembly to release the requested records, and an award of attorney fees.

¶11 On August 7, 2020, one of the newspapers, after being contacted by the complainant, published an article relating details of the sexual harassment incident based on interviews of the complainant and others, including Gruszynski. On August 12, 2020, counsel for the Assembly sent a letter to the newspapers stating that, based on the complainant publicly sharing the details of the incident, the Assembly was releasing the requested records to the newspapers, but because the complainant continued to wish to remain anonymous, the records would be "redacted to protect the identity of the [complainant] and the witnesses." Counsel also stated that the records would be redacted to remove "three references to protected health information or otherwise confidential information."

¶12 The redacted records consisted of three documents: the complaint that had been submitted by the complainant; the human resources office investigation report; and a printout of Facebook Messenger texts between Gruszynski and the complainant on the evening of the incident ("the requested records").[4]

¶13 In October 2020, the newspapers filed an amended complaint alleging that the Assembly violated the public records law in two respects: (1) withholding and delaying release of the requested records; and (2) providing redacted versions

---

[4] The Assembly asserts that these three records are the only records in its possession responsive to the newspapers' public records requests, and the newspapers do not take the position that they currently have reason to believe that there are additional responsive records.

of the requested records. The amended complaint sought an order declaring that the Assembly violated the public records law, a mandamus order directing the Assembly to release the requested records without the challenged redactions, and an award of attorney fees.

¶14 On cross-motions for summary judgment, the circuit court, in a comprehensive decision, determined that the newspapers are "entitled to summary judgment and to full attorney fees." As to summary judgment, the court determined that the Assembly "misapplied the balancing test and violated the [Public] Records Law" by: (1) not releasing "even redacted records" in response to the newspapers' initial records requests; and (2) making the challenged redactions when it did release the requested records. Having determined that the newspapers prevailed on their claims, the court granted their request for attorney fees. The Assembly appeals.[5]

¶15 After the parties completed their appellate briefing, our supreme court issued its decision in *Friends of Frame Park*, 403 Wis. 2d 1, in which the court addressed the test for determining whether a requester is entitled to attorney fees in a public records case. *Id.*, ¶¶2-3. The Assembly requested, and this court ordered, supplemental briefing on the application of the test stated by a majority of justices in *Friends of Frame Park*.

## DISCUSSION

¶16 The circuit court addressed the alleged public records law violations on cross-motions for summary judgment. We review the circuit court's grant of

---

[5] The circuit court subsequently entered orders, based on the parties' stipulations, which stayed pending appeal its orders that the Assembly release the records without the challenged redactions and that the newspapers file an affidavit of attorney fees and costs and any claim for statutory damages.

summary judgment de novo, using the same methodology as the circuit court. ***R.W. Docks & Slips v. State***, 2001 WI 73, ¶12, 244 Wis. 2d 497, 628 N.W.2d 781. Summary judgment is proper if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. ***Id.***; WIS. STAT. § 802.08(2) (summary judgment to the moving party) and (6) (summary judgment to the non-moving party). Because there are no disputes of material fact in this case, we are concerned solely with the correct application of the public records law to the undisputed facts. "We review a record custodian's decision to deny a public records request independently." ***Madison Teachers, Inc. v. Scott***, 2018 WI 11, ¶16, 379 Wis. 2d 439, 906 N.W.2d 436.

¶17     As discussed in greater detail below, the public records law sets out the rights of the public to access public records, as well as the procedures to obtain them and limitations on the rights to public access. WIS. STAT. §§ 19.31-36. With exceptions not applicable here, an authority responding to a public records request must conduct a balancing test of the public interests in favor of release and in favor of declining to release the record at issue. ***Madison Teachers, Inc.***, 379 Wis. 2d 439, ¶¶16-20; ***Milwaukee J. Sentinel v. Wisconsin Dept. of Admin.***, 2009 WI 79, ¶¶54-55, 319 Wis. 2d 439, 768 N.W.2d 700. The enforcement provision of the law provides that, if an authority denies or delays access to a record after a written request for release of the record is made, then the requester "may bring an action for mandamus asking a court to order release of the record." WIS. STAT. § 19.37(1)(a). In addition, the circuit court "shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1)[.]" Sec. 19.37(2)(a). In this case, the newspapers filed an action under § 19.37(1)(a) and the circuit court ruled in their favor.

8

¶18     In its initial appellate briefing, the Assembly argues that the circuit court erred in: (1) determining that the Assembly violated the public records law by initially denying the newspapers' public records requests and releasing only the Summary, and determining that the newspapers are entitled to attorney fees for that violation; and (2) determining that the Assembly violated the public records law by making redactions when it subsequently released the requested records, and determining that the newspapers are entitled to attorney fees for that violation. The newspapers respond that the circuit court ruled properly in all respects.

¶19     In supplemental appellate briefing, the Assembly argues that, pursuant to the majority/lead opinion and concurrence in *Friends of Frame Park*, 403 Wis. 2d 1, its production of the redacted versions of the records before the circuit court issued its ruling renders moot the newspapers' first cause of action challenging the Assembly's initial outright denial of their public records requests, and that no mootness exceptions apply.[6]  Therefore, the Assembly's argument continues, the newspapers are not entitled to a review of the merits of, or an award of attorney fees relating to, that challenge. The newspapers respond that their challenge to the Assembly's initial response is not moot; that even if it is moot, at

---

[6] As our supreme court has recently explained, and as we discuss in detail below:

> Mootness is a doctrine of judicial restraint. An issue is moot when its resolution will have no practical effect on the underlying controversy. Because moot issues do not affect a live controversy, this court generally declines to reach them. But we may overlook mootness if the issue falls within one of five exceptions: (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from [the appellate] court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

*Marathon Cnty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901 (internal citations omitted).

least four exceptions to mootness apply; and that under either alternative it is entitled to attorney fees because the Assembly violated the public records law resulting in a change in the parties' legal relationship.

¶20 We resolve the issues raised by the parties in their initial and supplemental briefing as follows. In Section I, we begin with an examination of the divided opinion in *Friends of Frame Park*. We explain our conclusion that a majority of justices in that case established the test to determine whether a plaintiff is entitled to attorney fees as a prevailing party in a public records action. We also conclude that no majority of justices precluded, based on the doctrine of mootness or any other grounds, a court's application of that test in a case like this one, when the governmental authority voluntarily released the requested records after having initially denied their release.

¶21 In Section II, we address the Assembly's argument that the newspapers' first cause of action challenging its initial outright denial is moot and that no exceptions apply. We first summarize the well-established legal principles concerning mootness. Applying those principles, we conclude that the newspapers' challenge to the Assembly's initial outright denial of the records requests is not moot, and, alternatively, that even if it is moot, exceptions to mootness warrant our review of that challenge.

¶22 In Section III, we address the merits of the newspapers' challenge to the Assembly's initial denial of the requested records. We first summarize the pertinent legal principles pertaining to the public records law. We next apply those principles and conclude that the Assembly violated the public records law when it initially denied outright the newspapers' requests. Because that determination causes a "change in the parties' legal relationship," *Friends of Frame Park*, 403

Wis. 2d 1, ¶3, we further conclude that the newspapers are entitled to attorney fees on their challenge to the Assembly's initial response.

¶23 In Section IV, we address the merits of the newspapers' challenge to the redactions. We conclude that the Assembly violated the public records law when it made all but one of the challenged redactions. Given the resulting "change in the parties' legal relationship," *id.*, we further conclude that the newspapers are entitled to attorney fees on their challenge to the improper redactions.[7]

## I. *Friends of Frame Park*

¶24 In *Friends of Frame Park*, Friends of Frame Park, U.A. ("Friends") requested that the City of Waukesha release certain records relating to the City's plans to bring amateur baseball to Frame Park. *Friends of Frame Park*, 403 Wis. 2d 1, ¶¶5-7. Two weeks later, the City released all documents responsive to the request except a draft contract with one baseball team. *Id.*, ¶6. The City explained its rationale in withholding the draft contract, which was primarily to protect the City's "negotiating and bargaining position" until after the Common Council reviewed, discussed, and took action on it. *Id.* The day before the Common Council was scheduled to meet to discuss the use of Frame Park, Friends filed an action under WIS. STAT. § 19.37(1) seeking release of the draft contract, attorney fees, and other expenses. *Id.*, ¶7. The day after the Common Council meeting,

---

[7] The dissent, in footnotes 11 and 13, faults this opinion on the ground that we purport today to cause a judicially sanctioned change in the parties' relationship that entitles the newspapers to attorney fees. However, this particular critique seems to disregard the fundamental fact that our decision affirms a circuit court decision. That is, today we affirm the circuit court's judicially sanctioned change in the parties' relationship as to the newspapers' challenges to both the Assembly's initial outright denial of the requested records and its subsequent release of the records with redactions, applying reasoning that we conclude is consistent with that of a majority of our supreme court in *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263, as we now discuss in the text.

which was two days after Friends filed suit and approximately two months after the City initially withheld the draft contract, the City released it to Friends. *Id.*, ¶¶6-8.

¶25 Friends then amended its complaint to seek an order declaring that the City improperly withheld the draft contract. *Id.*, ¶9. The circuit court granted the City's subsequent motion for summary judgment, concluding that the City did not improperly withhold the draft contract and that Friends was not entitled to attorney fees. *Id.*

¶26 The court of appeals reversed. *Friends of Frame Park*, 2020 WI App 61, ¶5, 394 Wis. 2d 387, 950 N.W.2d 831. The court stated that when "litigation is pending and an authority releases a public record because a public records exception is no longer applicable ... the key consideration" for determining whether the requesting party is entitled to attorney fees "is whether the authority properly invoked the exception in its initial decision to withhold release." *Id.*, ¶4. The court stated that the requesting party is entitled to attorney fees when "it demonstrates a violation of [the public records law]; that is, an unreasonable delay caused by the improper reliance on an exception." *Id.* In other words, when an authority releases a requested record because a public records exception is no longer applicable—but before a court rules on the authority's reliance on that exception in initially denying the request—the requesting party is entitled to attorney fees when a court determines that the authority improperly initially denied the request in violation of the public records law. Applying that rule, the court concluded that Friends was entitled to attorney fees because the City improperly relied on "the 'competitive bargaining reasons' exception" and, consequently, unreasonably delayed the record's release. *Id.*, ¶5.

¶27 Our supreme court granted the City's petition for review and issued a divided opinion reversing the court of appeals. *Friends of Frame Park*, 403 Wis. 2d 1, ¶38.[8]

¶28 Justice Brian Hagedorn authored the majority/lead opinion. *Id.*, ¶¶1-38, 43 n.8 (referring to the opinion authored by Justice Hagedorn as the "majority/lead opinion") (Bradley, R.G., J., concurring). The majority/lead opinion identified the following to be the two issues before the court: determining the proper test for "entitlement to attorney's fees under WIS. STAT. § 19.37(2)(a)," and determining "whether the City properly withheld the draft contract until after the Common Council meeting." *Id.*, ¶12. As to the first issue, the majority/lead opinion established that the test to be used to determine whether a party is entitled to attorney fees under § 19.37(2)(a) is the prevailing-party test for attorney fees: the "party must obtain a judicially sanctioned change in the parties' legal relationship."[9] *Id.*, ¶¶3, 24; *see also* ¶¶19-24 (relying on the meaning of "prevailing party" in BLACK'S LAW DICTIONARY, federal case law, and Wisconsin statutes in addition to § 19.37(2)(a)). As to the second issue, the majority/lead opinion determined that the City properly applied the balancing test and did not violate the public records

---

[8] Our supreme court has directed "that a court of appeals decision expressly overruled by this court no longer retains any precedential value, unless this court expressly states that it is leaving portions of the court of appeals decision intact." *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶56, 326 Wis. 2d 729, 786 N.W.2d 78. In the reversal of the court of appeals decision by the four-justice majority in *Friends of Frame Park, U.A. v. City of Waukesha*, 403 Wis. 2d 1, ¶¶1-101, there is no language expressly leaving any part of the court of appeals decision intact so as to be binding in this case.

[9] In stating that the prevailing-party test described in the text applies to a request for attorney fees under WIS. STAT. § 19.37(2)(a), the supreme court rejected an alternative causal nexus test that had sometimes been used by the court of appeals. *Friends of Frame Park*, 403 Wis. 2d 1, ¶¶2-3, 15, 18, 24 (Hagedorn, J.); *id.*, ¶¶8, 69-92 (Bradley, R.G., J., concurring).

law when it temporarily withheld the draft contract, and that it did not unreasonably delay release of the draft contract. *Id.*, ¶¶4, 25, 37, 38.

¶29 Only after resolving the second issue, the lawfulness of the City's response to the public records request, did the majority/lead opinion reach a third issue, whether Friends met the attorney fees test. *Id.*, ¶¶4, 25 (concluding that, because the City properly applied the balancing test and did not violate the law, "no judicially sanctioned change in the parties' relationship is appropriate and [Friends] is not entitled to any attorney's fees."). In doing so, the majority/lead opinion implicitly indicated that courts may address the merits before determining whether a requester can meet the test for entitlement to fees. *Id.*, ¶25 (stating that, because the City did not violate the public records law, Friends could not meet the prevailing-party test, and, therefore, "Friends is not entitled to attorney's fees").

¶30 The majority/lead opinion noted that the concurrence asserted that a requester cannot meet the prevailing-party test for attorney fees when the requested records are released before a court issues a ruling in a public records action seeking release of the records, because the action becomes moot in that situation. *Id.*, ¶4. The majority/lead opinion expressly stated, "We save this issue [of mootness] for another day." *Id.* The majority/lead opinion explained that the court did not need to address the issue of mootness because the City did not violate the public records law. *Id.*, ¶¶4, 25, 37 (stating that "regardless of" mootness, Friends was not entitled to attorney fees because the City "properly applied the balancing test and did not violate the public records law"). In other words, because a review of the merits in that case established no violation of the public records law, which in turn established that the requester was not entitled to attorney fees, the question of mootness—specifically, whether the public records action was moot based on the authority's

release of the requested record before a court issued a ruling—did not need to be addressed. *Id.*, ¶¶4, 25, 37.

¶31    To summarize, the majority/lead opinion ruled that Friends was not entitled to attorney fees (that is, it did not meet the attorney fees test) regardless of mootness because Friends lost on the merits of its public records claim and, therefore, no judicially sanctioned change in the parties' legal relationship was appropriate.

¶32    Justice Rebecca Grassl Bradley authored a concurrence joined by Chief Justice Annette Kingsland Ziegler and Justice Patience Drake Roggensack. *Id.*, ¶¶39-102.  The concurrence joined the position of the majority/lead opinion that, to be entitled to attorney fees in a public records action, the requester must "obtain a judicially sanctioned change in the parties' legal relationship."  *Id.*, ¶3; *see also* ¶¶80-92 (relying on the meaning of the term "prevailing party").  The concurrence emphasized that the prevailing-party test for entitlement to attorney fees "is not a merits determination"; rather, to meet the test "a party must receive favorable relief from a court[.]"  *Id.*, ¶90 n.30 (Bradley, R.G., J., concurring).  The concurrence determined that the City's voluntary release of the requested record before the circuit court issued a ruling rendered Friends' public records action moot, "obviating any need to address the merits."  *Id.*, ¶43 (Bradley, R.G., J., concurring).

¶33    However, the concurrence also acknowledged in a footnote that "Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed.  We may, however, choose to address moot issues in 'exceptional or compelling circumstances.'"  *Id.*, ¶43 n.9 (quoting *Portage County v. J.W.K.*, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509) (Bradley, R.G., J., concurring).  The concurrence did not qualify this exceptions-to-

mootness rule so as to preclude a merits determination, in the same way that the concurrence qualified the prevailing-party test. *See **Friends of Frame Park***, 403 Wis. 2d 1, ¶43. Rather, the concurrence stated only that when an action is moot no court "needed to address the merits." *Id.* The concurrence did not explicitly address whether any of the exceptions to mootness applied in that case to warrant considering the merits and the attorney fees issue. The only reasonable inference is that the concurring justices concluded that no exceptions to mootness applied.

¶34 To summarize, the concurrence explicitly reasoned that Friends was not entitled to attorney fees because the City's release of the requested record before the circuit court issued a ruling on Friends' public records action rendered the action moot. The concurrence implicitly reasoned that no exceptions to mootness warranted addressing the merits of the public records action.

¶35 Justice Jill Karofsky authored a dissent joined by Justices Ann Walsh Bradley and Rebecca Frank Dallet. *Id.*, ¶¶103-139. The dissent rejected the majority/lead opinion's prevailing-party test for determining whether a requesting party is entitled to attorney fees and determined that the proper test is the causation test, by which a court "looks for a 'causal nexus' between the filing of" a public records action and the record's release. *Id.*, ¶¶109-115 (relying on the meaning of the phrase "the requester prevails").

¶36 Addressing the issue of mootness, the dissent noted that, if voluntary release of records after an initial denial renders a public records action moot (as the concurrence would have it), then one "possible effect" of the majority/lead opinion's prevailing-party test would be to create "a perverse incentive for the government to strategically delay the release of records." *Id.*, ¶117. The dissent also noted a second possible effect if the rule is that voluntary release of records

16

after an initial denial does not render the public records action moot or that an exception to mootness applies. *Id.*, ¶118. If that is the rule, then in every case involving voluntary release after an initial denial a court must address (as Justice Hagedorn did) the merits of the initial denial to determine "if it officially sanctioned a change in the parties' legal relationship" so as to entitle the requesting party to attorney fees. *Id.* Addressing the merits, the dissent concluded that the City improperly applied the balancing test, thereby unlawfully delaying release of the contract and entitling Friends to attorney fees on the ground that "Friends should have prevailed in its action against the City." *Id.*, ¶¶122-138.

¶37 "It is a general principle of appellate practice that a majority [of judges or justices] must have agreed on a particular point for it to be considered the opinion of the court." *State v. Dowe*, 120 Wis. 2d 192, 194, 352 N.W.2d 660 (1984). Our summaries of the divided opinions in *Friends of Frame Park* establish that four justices agreed that, to prevail in a public records action so as to be entitled to attorney fees, "a party must obtain a judicially sanctioned change in the parties' legal relationship," *Friends of Frame Park*, 403 Wis. 2d 1, ¶3.

¶38 However, no majority of justices ruled that voluntary release of requested records in the course of litigation of a public records action renders the action moot. While the three justices joining the concurrence so ruled, *Friends of Frame Park*, 403 Wis. 2d 1, ¶43, the majority/lead opinion expressly declined to reach the issue of mootness and addressed the merits of the action, *id.*, ¶4 ("we save this issue [of mootness] for another day"), ¶37 ("regardless of whether the issue of attorney's fees is moot, Friends is not entitled to attorney's fees because it did not prevail … on the merits of its mandamus action"). The three justices joining the dissent did not reach the issue of mootness but addressed the merits of Friends' action. *Id.*, ¶¶122-38. Accordingly, and as the Assembly itself argues, the divided

17

opinion in *Friends of Frame Park* does not preclude an examination in this case of whether the newspapers' challenge to the Assembly's initial outright denial of their records requests was rendered moot by the Assembly's subsequent voluntary release of redacted versions of the requested records, or whether if the issue is moot then exceptions to mootness apply.

¶39    The majority/lead opinion also did not reach the issue of whether the prevailing-party test means that voluntary compliance following the filing of a lawsuit always precludes a requesting party from obtaining attorney fees. *Id.*, ¶25 ("We reserve this question for another day.  Even if attorney's fees may be awarded after the voluntary production of records, the City here did not violate the law …. Friends therefore would not be entitled to any judicial relief—that is, it would not prevail in whole or substantial part—even if fees are available in this context. Accordingly, Friends is not entitled to attorney's fees."), ¶38 ("regardless of whether Friends may pursue fees after voluntary delivery of the requested record, Friends cannot prevail in its mandamus action and is not entitled to attorney's fees"). Consequently, the divided opinion in *Friends of Frame Park* does not preclude this court's application of the prevailing-party test in a case like this one, when the governmental authority voluntarily released the requested records after having initially denied their release.[10]

---

[10]   The dissent does not accurately represent pertinent statements adopted by the majority of justices in *Friends of Frame Park*, 403 Wis. 2d 1.

## II. Mootness

¶40 The Assembly argues that the newspapers' first cause of action challenging the Assembly's initial outright denial of the newspapers' record requests is moot and that no exceptions apply.[11] We now explain our conclusion

---

Sections I and II of the dissent largely expand on the analysis in the concurrence in ***Friends of Frame Park***, but those sections erroneously attribute that analysis to the lead/majority opinion. According to the dissent, there is no separation between the majority/lead opinion and the concurrence in a situation such as this one, in which the circuit court's review of the merits properly establishes that the authority unreasonably delayed release of requested public records. That is, the dissent disregards the distinctions between the lead/majority opinion and the concurrence that we have explained. If the dissent were correct, there would have been no reason for Justice Hagedorn not to join the concurrence.

More specifically, the dissent fails to address the points made in the text at ¶¶28-31 and 38-39 summarizing the majority/lead opinion's carefully expressed views distinguishing its analysis from that in the concurrence. The dissent asserts that "there are no exceptions to the" prevailing-party test. Dissent, ¶113. However, the dissent cites no part of the opinions of a majority of the justices that supports this assertion. Further, this assertion disregards the concurrence's acknowledgement that exceptions to mootness may apply and the fact that the majority/lead opinion leaves unresolved the application of mootness and its exceptions. ***Friends of Frame Park***, 304 Wis. 2d 1, ¶¶4, 25, 37, 43 n.9 (Bradley, R.G., J., concurring).

On a related note, Sections I and II of the dissent rely heavily on the federal law from which a majority of justices in ***Friends of Frame Park*** derive the prevailing-party rule. *See **id.***, ¶¶19-24; ¶¶90-92 (Bradley, R.G., J., concurring). In doing so, the dissent loses sight of the fact that what is at issue here is the interpretation and application of state statutes, which this opinion has undertaken consistent with the majority rule carefully stated in ***Friends of Frame Park***.

[11] The dissent's assertion in footnote 17 that we misstate the Assembly's argument on appeal is incorrect. Throughout the Assembly's supplemental briefing, the Assembly exclusively argues that the newspapers are not entitled to attorney fees on the newspapers' first cause of action because that claim is moot and no exceptions to mootness apply. That approach is consistent with the argument in the Assembly's original briefing, which is to the effect that the newspapers are not entitled to attorney fees because the Assembly properly applied the balancing test and because the first cause of action "is moot," with "no need to address [its] merits" should our supreme court reverse the court of appeals in ***Friends of Frame Park***, which was pending in the supreme court at the time of the parties' original briefing.

that the newspapers' first cause of action is not moot and that, even if it is, several exceptions to mootness apply.[12]

¶41     Mootness is a question of law that this court reviews de novo. *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901.

¶42     Our supreme court has recently explained the doctrine of mootness as follows:

> Mootness is a doctrine of judicial restraint. An issue is moot when its resolution will have no practical effect on the underlying controversy. Because moot issues do not affect a live controversy, this court generally declines to reach them. But we may overlook mootness if the issue falls within one of five exceptions: (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from [the

---

[12] The Assembly does not argue that the newspapers' second cause of action challenging the Assembly's redactions in the released records is moot. Accordingly, we confine our analysis of mootness to the newspapers' first cause of action challenging the Assembly's initial denial of the records requests.

Separately, the dissent asserts that in this context only our supreme court may apply the doctrine of mootness and determine whether its exceptions apply. Dissent, ¶¶113-114. The dissent does not support this assertion with legal authority, and case law establishes that circuit courts and the court of appeals have long applied the doctrine of mootness and determined whether its exceptions apply, of course always ultimately subject to potential review by our supreme court. *See, e.g.*, *PRN Assocs. LLC v. State Dep't of Admin.*, 2009 WI 53, ¶¶25, 28, 49, 317 Wis. 2d 656, 766 N.W.2d 559 (reviewing whether the circuit court properly dismissed as moot a petition for review and stating, "[m]ootness is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals"); *Outagamie Cnty. v. C.J.A.*, 2022 WI App 36, ¶¶7-8, 404 Wis. 2d 1, 978 N.W.2d 493 (stating that "[m]oot appeals are generally dismissed, but courts have discretion to decide them under 'exceptional or compelling circumstances'" and proceeding to address the issue on appeal because it "fits into multiple exceptions to the doctrine of mootness."); *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶¶3-4, 233 Wis. 2d 685, 608 N.W.2d 425 (determining that exceptions to mootness warrant addressing issue on appeal); *State v. Jeremiah C.*, 2003 WI App 40, ¶10, 260 Wis. 2d 359, 659 N.W.2d 193 (same). If the dissent means to suggest that a majority of our supreme court directed in *Friends of Frame Park* that no Wisconsin court may consider a mootness argument in this context unless and until the supreme court first announces a change in the law, we see no basis for that view.

appellate] court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

*D.K.*, 390 Wis. 2d 50, ¶19 (internal citations omitted).

¶43 Our supreme court has stated that an issue is not moot when a ruling on the issue would have a practical effect on "a legal consequence" of the ruling. *Sauk Cnty. v. S.A.M.*, 2022 WI 46, ¶20, 402 Wis. 2d 379, 975 N.W.2d 162. Consistent with this explanation, this court has concluded that the voluntary disclosure of a requested record does not render the action moot because a ruling on the merits "will have the practical effect of determining the [requester's] right to recover damages and fees under WIS. STAT. § 19.37(2)(a) based upon the [custodian's] denial of its request." *Portage Daily Reg. v. Columbia Cnty. Sheriff's Dep't*, 2008 WI App 30, ¶8, 308 Wis. 2d 357, 746 Wis. 2d 525.[13] So here, a decision on the merits of the newspapers' challenge to the Assembly's initial outright denial of their records requests will have a practical effect on the newspapers' entitlement to attorney fees. More specifically, if a court were to rule in favor of the newspapers on this challenge, then the newspapers would meet the prevailing-party test stated in our supreme court's opinion in *Friends of Frame Park*. *Friends of Frame Park*, 403 Wis. 2d 1, ¶3 (the test is a "judicially sanctioned change in the parties' legal relationship").

---

[13] We cite *Portage Daily Register v. Columbia County Sheriff's Department*, 2008 WI App 30, ¶8, 308 Wis. 2d 357, 746 N.W.2d 525, for its analysis of the issue of mootness, which, as explained above, was left unaddressed by our supreme court in *Friends of Frame Park*, 403 Wis. 2d 1. This court in *Portage Daily Register* determined that the plaintiff's challenge to the denial of its records request was not moot and that exceptions to mootness applied, analyzed the merits of the challenge, and reversed the dismissal of the plaintiff's public records action. *Portage Daily Reg.*, 308 Wis. 2d 357, ¶¶7-26. This court did not apply the causal nexus test rejected in *Friends of Frame Park*.

¶44    This conclusion is not precluded by an opinion of a majority of justices in that case.  As explained above, only the three justices joining the concurrence would rule that a case involving voluntary release is rendered moot by the release.  *Id.*, ¶43.  The lead/majority opinion did not reach mootness.  *Id.*, ¶¶4, 25, 37.  The Assembly appears to concede this point by citing only to the concurrence in support of its argument that the newspapers' first cause of action is moot.[14]

¶45    In the alternative, even if the newspapers' first cause of action were moot, we agree with the newspapers that all but the second of the five exceptions to mootness apply here to warrant our review.  *See Friends of Frame Park*, 403 Wis. 2d 1, ¶¶4 and 37 (regardless of whether the City's voluntary production of the requested record before the circuit court issued a ruling may have rendered the action moot, reviewing whether the City properly applied the balancing test when it initially denied the records request in order to determine whether an award of attorney fees is "appropriate"); *id.*, ¶43 n.9 (stating that appellate courts may choose

---

[14] The dissent emphasizes the need in this context for "a grant of judicial remedy or relief concerning the delay in production of the records."  Dissent, ¶¶105-106.  Here, there was such a grant, in the form of the ruling of the circuit court that the delay was unreasonable.

Further we observe that, under the reasoning in the dissent, there would appear to be no chance for a party ever to obtain relief for a claim of delay in the release of requested public records and that no majority of justices in *Friends of Frame Park* endorsed such a rule.  In this case, the amended complaint alleged that the Assembly violated the public records law in part by unreasonably delaying before ultimately releasing the requested records.  A claim of unreasonable delay can by definition only ever be asserted after the records have been released, after the delay but before a court has had an opportunity to decide such issues as whether the records were required to be released and the circumstances of eventual release.  The dissent's approach would have the effect of eliminating unreasonable delay as a cause of action for which relief may be granted.  This would contravene the legislature's express application of the public records law to unreasonable delays in release.  *See* WIS. STAT. § 19.37(1) and (2) (providing for enforcement and penalties "[i]f an authority … delays granting access to a record or part of a record").  It would have the effect of reading the words "or delays" out of the statute.  *See State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes ….").

to address moot issues in "'exceptional or compelling circumstances'") (source omitted) (Bradley, R.G., J., concurring).

¶46 The issue on appeal, access to records regarding the complaint of sexual harassment against an elected state official and the Assembly's related investigation, is of great public importance. The public has a strong interest in being informed about both an allegation that an elected official has sexually harassed a government employee and also how the allegation has been investigated and resolved by the legislature. *See Democratic Party of Wis. v. DOJ*, 2016 WI 100, ¶22, 372 Wis. 2d 460, 888 N.W.2d 584 (noting strong public interest in being informed about public officials' misconduct) (citing *Hempel v. City of Baraboo*, 2005 WI 120, ¶68, 284 Wis. 2d 162, 699 N.W.2d 551); *Hagen v. Board of Regents of Univ. of Wis. Sys.*, 2018 WI App 43, ¶¶8-9, 383 Wis. 2d 567, 916 N.W.2d 198 (noting great importance of public monitoring of a public institution's disciplinary operations); *Kroeplin v. DNR*, 2006 WI App 227, ¶28, 297 Wis. 2d 254, 725 N.W.2d 286 (noting great importance of public monitoring of disciplinary processes for misconduct by public officials).

¶47 As we explain below, the Assembly's initial response denying requests for those records and the evidence presented on summary judgment reflect the use of a purported balancing test previously established by the Assembly of the public interests, which effectively amounted to a blanket denial of public access to

records of investigations of misconduct complaints against elected legislators.[15] The Assembly in this case neither addressed why redactions would not suffice to protect the complainant's and witnesses' interests in confidentiality nor applied the fact-specific inquiry required by the statute. Thus, this same issue is likely to recur in incidents involving different persons. This requires a decision by this court to resolve any uncertainty as to how a governmental authority should handle similar public records requests. This issue is also likely to evade review to the extent that the governmental authority releases the records, as the Assembly did here, before a

---

[15] As we discuss further below, our supreme court has repeatedly reinforced that a governmental authority does not properly apply the public interest balancing test when it creates or follows a "blanket rule" to automatically deny the release of public records rather than addressing the facts regarding each record in the specific case before it. *See Milwaukee J. Sentinel v. DOA*, 2009 WI 79, ¶56, 319 Wis. 2d 439, 768 N.W.2d 700 (quoting *Hempel v. City of Baraboo*, 2005 WI 120, ¶62, 284 Wis. 2d 162, 699 N.W.2d 551). Summarizing this case law, the court stated:

> When courts balance the public interest in disclosure against the public interest in non-disclosure, generally there will be no "blanket exceptions from release." *Linzmeyer [v. D.J. Forcey*, 2002 WI 84, ¶10, 254 Wis. 2d 306, 646 N.W.2d 811] citing *Woznicki v. Erickson*, 202 Wis. 2d 178, 183, 549 N.W.2d 699 (1996)). Accordingly, the balancing test must be applied with respect to each individual record. *Wis[consin] Newspress[, Inc. v. School District of Sheboygan Falls*, 199 Wis, 2d 768, 780, 546 N.W.2d 143 (1996)] (concluding that "the balancing test must be applied 'on a case-by-case basis' … in order to determine whether a particular record should be released." (quoting *Law Offices of William A. Pangman & Assoc. v. Stigler*, 161 Wis. 2d 828, 840, 468 N.W.2d 784 (Ct. App. 1991)); *Hempel v. City of Baraboo*, 2005 WI 120, ¶62, 284 Wis. 2d 162, 699 N.W.2d 551 (concluding that the balancing test does not create a "blanket rule excepting the disclosure of any…personnel records[;] … [e]ach request will lead to a fact-intensive inquiry"); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682, 137 N.W.2d 470 (1965) (concluding that the determination of when "harm to the public interest would justify refusal to permit inspection … is … best left to case-by-case decision[s]").

*Milwaukee J. Sentinel*, 319 Wis. 2d 439, ¶56.

court has issued a ruling. Finally, a governmental authority's investigation of a public official's misconduct is not so rare as to render inessential a ruling from this court providing guidance as to the release of records regarding such an investigation.[16]

¶48 The Assembly asserts, in a conclusory and generic manner, that none of the above-quoted exceptions to mootness apply. The only specific arguments it makes are based on two cases cited by the majority/lead opinion in *Friends of Frame Park*. *See Friends of Frame Park*, 403 Wis. 2d 1, ¶25 (citing *Bjordal v. Town Bd. of Town of Delavan*, 230 Wis. 543, 284 N.W. 534 (1939) and *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Hum. Res.*, 532 U.S. 598 (2001)). The Assembly argues that this appeal does not involve the potential recovery of costs in a matter that "became moot in between a circuit decision and resolution of the appeal," as in *Bjordal*, 230 Wis. at 545. However, the Assembly does not explain why the fact that the particular exception to mootness applied in *Bjordal* renders inapplicable here all of the other exceptions quoted above. For that reason we do not consider this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

¶49 The Assembly also argues that the "voluntary cessation" exception to mootness acknowledged in *Buckhannon*, 532 U.S. at 609, does not apply here.

---

[16] The dissent at ¶¶118-120 disagrees with our application of the mootness exceptions, in part based on the premises that the circumstances here are "unique" and therefore unlikely to recur and that our analysis is not "ground-breaking." On the first point, it appears from the record that the Assembly's approach in this case may have been a standard response for that governmental authority, suggesting that it is an approach which the Assembly or other governmental authorities might follow in the future. On the second point, we submit that our application of the exceptions in this case could provide guidance to parties and courts addressing generally analogous situations in the future, even when there is not close alignment with the facts here.

That exception exists when a defendant has voluntarily ceased a challenged practice and it is "absolutely clear" that the practice can reasonably be expected to recur. *Id.* (quoted source omitted). This exception appears to be similar to the fourth and fifth exceptions quoted above. The Assembly argues that these exceptions cannot apply because, if we reversed on mootness grounds, the Assembly could not "claw back" the released records at issue here and then withhold the records from release for the same reasons it initially withheld them. The Assembly views the issue too narrowly. It is not the withholding of the specific records at issue in this case that will likely recur and evade review. Rather, the danger would be a repetition in the future, in another case, of what is challenged here: the withholding of public records relating to investigations of misconduct, such as sexual harassment, arising from government employee complaints, based on the same blanket-like denial regardless of the case-specific facts, instead of based on a proper application of the balancing test. That is the issue that, so far as we can discern, will likely recur and evade review should the Assembly again release requested records before a circuit court ruling. Contrary to the Assembly's unreasonably narrow assertion, it is "not impossible for the issue presented in this case to repeat" when that issue is properly defined.

¶50 Having explained why the exceptions to mootness apply to the newspapers' challenge to the Assembly's initial response to their public records requests, we proceed to address the merits and the attorney fees issue relating to that response.

### III. Initial Outright Denial of Records Requests

¶51 The legislature has created in the public records law a presumption of public access to public records. *Madison Teachers, Inc. v. Scott*, 2018 WI 11, ¶17,

26

379 Wis. 2d 439, 906 N.W.2d 436; ***Democratic Party of Wis.***, 372 Wis. 2d 460, ¶9. Specifically, the legislature has declared:

> [I]t is … the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, [Wis. Stat. §§] 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31. Our supreme court has recognized this statement of the public interest to be "one of the strongest declarations of policy to be found in the Wisconsin Statutes." ***Milwaukee J. Sentinel***, 319 Wis. 2d 439, ¶52.

¶52 In light of this policy, "Except as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a); ***Friends of Frame Park***, 403 Wis. 2d 1, ¶27. Once a legal custodian of a record receives a request, the custodian "shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor." Sec. 19.35(4)(a); ***Friends of Frame Park***, 403 Wis. 2d 1, ¶27. If the custodian withholds a record in whole or in part, or delays its release, the requester may bring an action for mandamus to compel the record's release. Wis. Stat. § 19.37(1); ***Friends of Frame Park***, 403 Wis. 2d 1, ¶29.

¶53 Wisconsin law recognizes three types of exceptions to the strong presumption in favor of public access: statutory exceptions, common law

exceptions, and public policy exceptions. *Democratic Party of Wis.*, 372 Wis. 2d 460, ¶10. When, as here, there are no asserted statutory or common law exceptions, the custodian must apply "the public policy balancing test, which requires a consideration of all relevant factors to determine whether the public interest in nondisclosure outweighs the public interest in favor of disclosure." *Id.*, ¶11. The public policy balancing test "considers 'whether disclosure would cause public harm to the degree that the presumption of openness [of public records] is overcome.'" *Madison Teachers, Inc.*, 379 Wis. 2d 439, ¶20 (quoting *Democratic Party of Wis.*, 372 Wis. 2d 460, ¶11).

¶54 The balancing test is undertaken "through a case-by-case analysis." *Madison Teachers, Inc.*, 379 Wis. 2d 439, ¶19. "[T]he custodian must determine whether the surrounding actual circumstances create an 'exceptional case' not governed by the strong presumption of openness." *Id.* (internal quotation marks and quoted source omitted). "If a custodian denies a public records request, [the custodian] must give specific reasons for denying access, and it is the role of the court to determine whether the reasons are sufficient .… [The court's] determination is made independently. The party seeking nondisclosure has the burden to show that public interests favoring secrecy outweigh those favoring disclosure." *Democratic Party of Wis.*, 372 Wis. 2d 460, ¶9 (internal citations and quotation marks omitted).

¶55 "Because the balancing of the public interests for and against disclosure presents a question of law, the [circuit] court undertakes a de novo review, and may substitute its judgment for that of the custodian." *Kraemer Bros., Inc. v. Dane Cnty.*, 229 Wis. 2d 86, 95, 599 N.W.2d 75 (Ct. App. 1999) (internal citations omitted). Our review of the custodian's application of the balancing test is also de novo. *Friends of Frame Park*, 2022 WI 57, ¶30; *Madison Teachers,*

*Inc.*, 379 Wis. 2d 439, ¶16. In this case, however, "we benefit from [the circuit] court's thorough and thoughtful analysis." *See **Kraemer Bros., Inc.***, 229 Wis. 2d at 95.

### A. Application of Public Policy Balancing Test

¶56 Here, the newspapers challenge the Assembly's application of the public policy balancing test when it produced the Summary but initially declined to release any records.[17]

¶57 As partially summarized above, the Summary initially produced by the Assembly stated the reasons for not releasing any records, repeated the contents of the press release issued the day before by the Assembly Democratic Leadership, and added one sentence stating that "remedial actions" were required as a result of the underlying alleged conduct. We agree with the circuit court that the Assembly's production of the Summary constitutes "an outright denial of the requested records." *See **Journal Times v. Police & Fire Comm'rs Bd.***, 2015 WI 56, ¶55, 362 Wis. 2d 577, 866 N.W.2d 563 (public records law provides access to existing records, not to information). The Assembly does not argue to the contrary; rather, the Assembly argues that it properly applied the public policy balancing test in denying outright all access to the requested records.

¶58 Accordingly, we now turn to the Assembly's reasons for denying outright all access. In the Summary, the Assembly identified the following "public interests" that it asserted "outweighed any public interest in disclosure of the

---

[17] It is undisputed that the Legislative Human Resources Office purported to apply the public policy balancing test, both when it initially denied the newspapers' public records requests and when it released redacted versions of the requested records. For ease of reading, we will refer to the Assembly as the entity that purported to apply the public balancing test, and to the Legislative Human Resources Office as the entity that conducted the investigation of the complaint at issue.

requested records, even in redacted form": (1) the public interest in "the privacy and dignity of past and future victims/complainants/witnesses;" and (2) the public interest in "instilling employee confidence that the Legislature will handle sensitive internal complaints (especially those related to sexual harassment) in [an] as confidential as possible manner" so as not to discourage future victims from reporting concerns and future witnesses from cooperating with internal investigations, which would "compromise[] the Legislature's ability to be informed of and to timely respond to and resolve such concerns/complaints." The Summary explained that unspecified "staff" asked that the requested records not be released, "even in redacted form," because doing so would both "compromise the privacy and dignity of the complainant/witnesses" and chill reporting by future complainants and cooperation with future investigations.[18]

---

[18] The Summary's explanation of the Assembly's application of the balancing test reads in full:

> Please note that after reviewing your request, the Legislature applied the WIS. STAT. § 19.35(1)(a) public records balancing test and determined that the public interest in treating employee internal complaints as confidentially as possible and respecting the privacy and dignity of the complainant/witnesses outweighed any public interest in disclosing a copy of the employee complaint against Representative Staush Gruszynski, as well as a copy of the investigation that was conducted as a result of the complaint.

¶59 We conclude that the Assembly's application of the balancing test, as described in the Summary, fell short in at least the following two respects.

### 1. *No record-specific application of balancing test*

¶60 First, the Summary did not describe the records that were responsive to the requests and then apply the balancing test to each record individually to explain why it was not disclosed. *See **Milwaukee J. Sentinel,*** 319 Wis. 2d 439, ¶¶55-56 (the balancing test must be applied to each individual record). To repeat, it is undisputed by the parties on appeal that the following three documents were responsive to the public records requests: the complaint, the investigation report, and the text messages printout. The Summary appears to have treated all three documents as a unitary package that, taken as a whole, was the record of the

---

In performing the initial balancing test, the Legislature looked at several factors when balancing access/disclosure of the information requested above and the strong public policies favoring nondisclosure. Specifically, the Legislature determined that the public interest in protecting the privacy and dignity of past and future victims/complainants/witnesses and instilling employee confidence that the Legislature will handle sensitive internal complaints (especially those related to sexual harassment) in [an] as confidential as possible manner to ensure that future victims/witnesses feel safe reporting concerns and cooperating with internal investigations, outweighed any public interest in disclosure of the requested records, even in redacted form (this included weighing the public's interest in shedding light on the workings of government and the official acts of elected officials and employees). Specifically, staff have requested that the materials related to the request above not be released and expressed concerns that release of the materials related to the requests above, even in redacted form, would compromise the privacy and dignity of the complainant/witnesses based upon the fact that the complainant/witnesses could still be easily identified. Staff have also voiced concerns that releasing such records, even in redacted form, would have a chilling effect on future victims coming forward to report concerns and future witnesses cooperating with internal investigations. All of which compromises the Legislature's ability to be informed of and to timely respond to and resolve such concerns/complaints.

complaint/investigation process. We infer from this apparent treatment that the Assembly's application of the balancing test, based on the two factors identified in the Summary as stated above, was intended to support denial of release of the entire package. However, the Summary did not provide policy reasons for the denial that were specific to each document. Specific reasons why each document warranted confidentiality "are necessary to provide the requester with sufficient notice of the grounds for denial to enable the requester to prepare a challenge to the withholding." *Portage Daily Reg.*, 308 Wis. 2d 357, ¶14.

¶61 The absence of record-specific policy reasons for denial was particularly problematic here, because the differing natures of the three documents implicated different levels of public interest. At a broad level, the complaint and the investigation report both presented a narrative of the alleged details of the incident and they contained overlapping content. Nonetheless, their release as distinct documents may serve, in different ways, the public interest underlying the presumption in favor of disclosure. For example, the public interest in how an agency investigates itself might be considerably higher than the public interest in the particulars of what one complainant alleged happened on a particular occasion. *See Milwaukee J. Sentinel*, 319 Wis. 2d 439, ¶63 (citing *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, 300 Wis. 2d 290, 731 N.W.2d 240, for the proposition that the public has an interest in knowing how government officials handle disciplinary actions of public employees). As for the text messages printout, it was of an entirely different nature—disjointed and lacking in detail, and neither in narrative form nor tethered to any context. The Summary did not explain how the stated general concerns about the efficacy of redaction in protecting confidentiality and not chilling future investigations reasonably applied to the fragmented contents of the text messages printout.

¶62 Furthermore, in failing to apply the balancing test to each document, the Summary effectively rested on what amounts to a blanket or automatic denial rule that applies to all records related to complaints and investigations of sexual harassment and, more broadly, to all records related to complaints of misconduct in public work environments (and whatever else might be embraced by the Summary's reference to "sensitive internal complaints"). A "blanket rule" is not a proper application of the balancing test. *See Milwaukee J. Sentinel*, 319 Wis. 2d 439, ¶56; *see also Kroeplin*, 297 Wis. 2d 254, ¶43 (in which the court rejected similar reasons for denying access to the responsive records because they were not specific to the particular documents in the case but "applie[d] generally to all disciplinary records"); *Madison Teachers, Inc.*, 379 Wis. 2d 439, ¶19 (the balancing test must be applied "through a case-by-case analysis" of "the surrounding factual circumstances," and the custodian may not rely on "blanket exceptions"); *Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 780, 546 N.W.2d 143 (1996) ("the balancing test must be applied in every case in order to determine whether a particular record should be released, and there are no blanket exceptions other than those provided by the common law or statute").

¶63 As the Assembly points out, in the litigation of this case the Legislative Human Resources Office employee who took responsibility for preparing the Summary averred that, while she consulted a file containing examples of prior responses to public record requests, she applied the balancing test based on her consultation with the complainant and her "experience with other staff." However, the Summary uses generic language. Further it is framed in terms of "past and future victims/complainants/witnesses" and "future victims/witnesses." It makes vague references to concerns of unidentified "staff" regarding "the complainant/witnesses" and release of "the materials related to the request" at issue.

All of these features of the Summary reflected that the Assembly operated under a presumption *against* disclosure, instead of operating from the legally required presumption *in favor of* disclosure. Thus, the balancing test as expressed in the Summary was fatally flawed without consideration of how the Assembly evaluated the specific facts here to assess whether the public interest in disclosure sufficed to overcome that presumption against disclosure. In other words, the Summary shows that the Assembly acted contrary to the legal requirement that, as a records custodian, it is to begin the analysis by bearing "in mind" "the strong legislative presumption favoring disclosure" and only then look to the specific facts of the case at hand to determine whether "some even stronger public policy favoring limited access or nondisclosure" overcomes that presumption. *Hempel*, 284 Wis. 2d 162, ¶¶28, 62-63. *See also Madison Teachers, Inc.*, 379 Wis. 2d 439, ¶¶17-20.

¶64 The Assembly asserts that it did not apply a blanket exception from the requirements of the public records law, but only that the generic, future-focused factors stated in the Summary "[were required to] be considered … and weigh[ed] in favor" of not releasing the requested records. More specifically, the Assembly seems to argue that, even if not unique to the requested records in this case, the general public interest in avoiding chilling effects on the filing of sexual harassment complaints was deserving of great weight in this case, citing *Hempel*, 284 Wis. 2d 162, ¶¶72-73. However, *Hempel* is inapposite.[19]

¶65 In that case, the subject of a sexual harassment complaint requested unredacted versions of documents related to the investigation of the complaint,

---

[19] Unlike the Assembly, we address only the analysis in our supreme court's opinion in *Hempel*, not any part of the analysis in this court's opinion in the same case, which the supreme court affirmed. *See Hempel v. City of Baraboo*, 2005 WI 120, ¶84, 284 Wis. 2d 162, 699 N.W.2d 551.

taking the position that he needed complete versions so that he could interview the witnesses and conduct his own investigation. *Id.*, ¶¶2, 65. The court noted that the custodian, in providing only redacted versions of the requested records, sought to "protect the complainant and reluctant witnesses involved in [the] investigation," so as to avoid "a chilling effect on sexual harassment complaints." *Id.*, ¶¶73, 78. Unlike the Assembly here, the custodian in *Hempel* released records that, "despite redactions," provided substantial detailed information about the alleged sexual harassment "problem within the [City of Baraboo Police] Department." *Id.*, ¶69. The court stated that the redactions "protected the privacy and confidentiality of certain witnesses without hiding alleged conduct," and that the "release of the redacted documents weighs heavily in the balancing test." *Id.*, ¶¶69-70. *Hempel* does stand for the general proposition that one legitimate public policy consideration for a records custodian to use *in making possible redactions* in the context of an investigation of a sexual harassment complaint can be the need to avoid creating chilling effects limiting complaints. But that proposition is not at issue here. *Hempel* provides no support for the Assembly's position on the first issue, because the Assembly here, unlike the custodian in *Hempel*, initially declined to release even redacted versions of the requested records.

¶66 Moreover, the Assembly's assertion on appeal that these generic future-focused factors weighed heavily in favor of outright denial is belied by the Summary's reliance on *only* these factors, stated in the conclusory fashion described above, when considering the public interest in nondisclosure. The Assembly failed to demonstrate a "fact-intensive inquiry" of the specific circumstances and concerns *that were then at issue* in order to determine whether the public interest in denying release of the three requested documents outweighed the public interest in release of each. *See Hempel*, 284 Wis. 2d 162, ¶62.

¶67    While the Summary did not present any specific bases for its general according of great weight to the public interest in the privacy of the complainant and cooperating witnesses and not chilling future reporting and investigations, the Assembly, in its appellate briefing, posits several bases that it argues are specific to this case. We now address and reject each.

¶68    The Summary stated that "staff have requested" that the records not be released, even in redacted form, due to concerns that the confidentiality of the complainant and witnesses would be compromised and future reporting and investigations of misconduct would be chilled, because the complainant and witnesses "could still be easily identified." The Assembly now argues that this rationale is valid because of the "unique nature of the Legislature." Whatever the Assembly means by this phrase, the Assembly does not explain why employees in other public-serving and public-facing governmental authorities—from state agency divisions and other units to municipal executive, legislative, and law enforcement offices—are not similarly aware of the interpersonal relationships, activities, and networks of their colleagues. Nor did the Summary explain why the public interest in the privacy of alleged victims of sexual harassment should carry special weight in the context of employment by the Assembly, as opposed to employment by other governmental agencies.

¶69    While some consideration is reasonable for staff concerns about confidentiality related to the release of records, the Assembly fails to explain why, if we agree with its argument on appeal, it would not always be the case that the release of even redacted records could possibly result in the identification of involved parties, and why it would not always be the case that the possibility of identification would categorically outweigh the public interest in disclosure. The stated rationale would essentially amount to a blanket rule against disclosure of even

redacted records related to any kind of misconduct by virtue of the public nature of public employment in the name of encouraging complaints about all manner of alleged misconduct, which would swallow whole the presumption in favor of disclosure of public records.

¶70    The Assembly also points to the undisputed fact that the complainant and witnesses who were interviewed by the Legislative Human Resources Office asked that their names and other identifying information not be reflected in released records.  However, the Summary did not address why the release of each of the requested records with redactions of the names and other identifying information of the complainant and interviewed witnesses would not suffice to address their requests. *See* WIS. STAT. § 19.36(6) ("If a record contains information that is subject to disclosure under [WIS. STAT. §] 19.35(1)(a) … and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.").  This court has explained that public employees have a generally lower expectation of privacy by virtue of their choice of public employment, but that in a specific case their privacy interests can be protected by redacting their names. ***Kraemer Bros., Inc.***, 229 Wis. 2d at 101, 102 n.11.  Indeed, when victims and witnesses have a strong privacy interest in their names, the public has a strong interest in protecting that privacy. ***Id.*** at 103.  In those situations, we have determined that this public interest in protecting certain privacy interests substantially outweighs the public interest in disclosure of their *names*. ***Id.*** (determining that disclosure of contractor's employees' names in payroll records was not required).  The Summary did not address this point generally or specifically, in terms of whether redacting the identities and other indirectly identifying information of the victims and the interviewed witnesses in the three

37

requested documents would suffice to protect the concerns identified in the Summary. Indeed, the Assembly's subsequent release of the records, redacted so as to protect the identities and identifying information of the complainant and interviewed witnesses, undermines, to a degree, the Summary's reasoning on this point. When releasing the redacted records, the custodian stated without any qualification, "Therefore any records responsive to the requests at issue in this case are being redacted to protect the identity of the victim and the witnesses." It is true that the complainant decided to share some public statements, albeit while remaining anonymous, which could have counted as one changed factor for the custodian to consider in the overall analysis. But that fact did not change the other circumstances here, including the nature of the requested records at issue or the ability of the custodian to redact them from the start.

¶71 In apparent acknowledgment of this deficiency in the Summary's reasoning, the Assembly now states that it "is not arguing that the [requested records] could not have been redacted in such a way as to protect the identities of the [complainant] and the witnesses." Rather, the Assembly argues that, even so, disclosure of redacted versions of the records would chill future investigations of harassment or misconduct because the complainant and witnesses "believed" that their identities would be discovered if redacted versions of the records were released. Allowing such beliefs to block release, even when the custodian determines that redactions would suffice to protect the complainant's and witnesses' identities, would essentially exempt the Assembly from ever being subject to the presumption in favor of disclosure. It would also hold the presumption of public access hostage to the subjective beliefs of complainants and create just the sort of blanket exception that our supreme court has long rejected. *See Wisconsin Newspress, Inc.*, 199 Wis. 2d at 780.

¶72     The Assembly next asserts that release of the requested records, even in redacted form, would exacerbate the complainant's undisputed distress following the incident by forcing her to relive the alleged sexual harassment.  The Assembly argues that the public interest in protecting the complainant from that additional harm, which the Assembly calls the "dignity interests" of the complainant, weighs against disclosure, citing *Democratic Party of Wis.*, 372 Wis. 2d 460, ¶32.  In that case, the requested public record was a video of a presentation by a district attorney at a prosecutor training conference, in which he discussed a sex extortion case involving high school victims that had been prosecuted several years earlier and the effects of those crimes on the victims.  *Id.*, ¶¶3, 28.  The court determined that the re-victimization that would result from the repeat exposure of the victims' identities weighed in favor of nondisclosure.  *Id.*, ¶32.  The court clarified that the public interest at issue was "the public interest in protecting the reputation and privacy of crime victims," specifically high school students who were victims of sexual extortion and deserving of special protection, with particular reference to "Wisconsin's constitutional commitment to treating victims with 'fairness, dignity and respect for their privacy.'"  *Id.*, ¶¶29 (quoting WIS. CONST. art. I, § 9m), 32 n.13.  While the complainant's distress here is undisputed, the Assembly's reliance on *Democratic Party of Wis.* is misplaced because of the special context of that case:  the high school victims were not public employees.  The complainant here is neither a child, a victim of a sex extortion plot, nor identified as a crime victim.  We do not minimize the serious and possibly long-lasting effects that an act of sexual harassment can have on the harassed person.  However, the reasoning in *Democratic Party of Wis.* turned on the special circumstances in that case.

¶73     In sum, the Assembly insufficiently applied the balancing test by not providing specific policy reasons why it was not disclosing the three different

records, even when we consider the expanded arguments that the Assembly now offers. *See **Friends of Frame Park***, 403 Wis. 2d 1, ¶¶4, 31-35 (noting that City provided all responsive documents except one, a draft contract, and that City stated reasons for temporarily withholding that specific document); ***Portage Daily Reg.***, 308 Wis. 2d 357, ¶14 ("the custodian must give a public policy reason why *the* record warrants confidentiality") (emphasis added).

### 2. *Insufficient consideration of public interest in disclosure*

¶74 Second, the Assembly's application of the balancing test as described in the Summary fell short in that the Summary made only a passing, parenthetical reference to the public interest in "shedding light on the workings of government and the official acts of elected officials and employees," and showed a failure to give serious consideration to the specific aspects of the public interest in disclosure of each of the records at issue. This parenthetical reference obscured the factually-specific focus of the public interest here, which is on the alleged serious misconduct of an elected official and the adequacy of the Assembly's response to an employee's complaint about that alleged serious misconduct. *See **Democratic Party of Wis.***, 372 Wis. 2d 460, ¶22 (stating that the public has a strong public interest in being informed about elected officials who have been derelict in their duty); ***Milwaukee J. Sentinel***, 319 Wis. 2d 439, ¶63 (citing ***Zellner***, 300 Wis. 2d 290, for the proposition that the public has an interest in knowing how the government handles disciplinary actions of public employees).

¶75 The Assembly suggests that it did not need to address in any detail the public interest in disclosure because "the public interest favoring disclosure is already established by the Public Records law." However, this assertion misrepresents the legal standard. The custodian must consider "all relevant factors,"

*Democratic Party of Wis.*, 372 Wis. 2d 460, ¶9, when applying the balancing test. This necessitates a careful consideration of any specific aspects of the public interest in disclosure (in addition to consideration of the general "strong presumption of openness") in order to determine whether "the facts are such that the public policy interests favoring nondisclosure outweigh the public policy interests favoring disclosure, *notwithstanding* the strong presumption favoring disclosure." *Hempel*, 284 Wis. 2d 162, ¶63. The Assembly does not persuade us that the specific aspects of the public interest in disclosure, referenced above, were irrelevant or so obviously outweighed by the stated aspects of the Assembly's asserted public interest in nondisclosure as to render unnecessary their explicit, case-specific consideration as part of the statutorily required balancing test. Indeed, the legal authority referenced above, acknowledging the specific aspects of the public interest in disclosure, indicates that the statutory presumption in favor of disclosure was not overcome here because those aspects were squarely implicated.

¶76 The Assembly makes a broad argument that would turn public records law on its head. It argues that, as of the time of the records requests, the Assembly Democratic Leadership's press release, the Assembly's Summary, and the reporting in the media of the remedial actions imposed by the Assembly Democratic Leadership, when considered together, were sufficient to serve both the general public interest in disclosure and the specific aspects of that interest implicated here in the alleged serious misconduct of an elected official and the adequacy of the response to the substantiated complaint. Given that these interests were satisfied, the Assembly asserts, the public interest in release of the records carried less weight such that it did not suffice to outweigh the public interest in nondisclosure. While the other releases and reports provided select, summary information about the complaint and investigation, the Assembly cites no legal authority supporting the

proposition that the release of such selected information renders less weighty the public interest in disclosure of the records in circumstances like these, and the case law suggests the opposite. *See Journal Times*, 362 Wis. 2d 577, ¶55 (public records law provides access to existing records, not to information). Further, stepping back, this argument ignores the presumption of the public records law that members of the public are entitled to evaluate public records for themselves, and are not required to trust in a governmental authority's selective summaries. An authority's statement about its own evaluation of the requested records and its own judgment about the public relevance of those records is no substitute for a proper response to a public records request.

¶77 In sum, we conclude that the Assembly's reasons for nondisclosure did not sufficiently demonstrate, as to each of the three responsive documents and in light of the specific facts, that the public interest in nondisclosure outweighed the public interest in disclosure.

## B. Attorney Fees

¶78 Under WIS. STAT. § 19.37(2)(a), "the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part" in the requester's action for mandamus. As stated, our supreme court has clarified that, "to 'prevail[] in whole or in substantial part' means the party must obtain a judicially sanctioned change in the parties' legal relationship" (the "prevailing-party test"). *Friends of Frame Park*, 403 Wis. 2d 1, ¶3; *id.*, ¶90 n.30 (Bradley, R.G., J., concurring) ("a party must receive favorable relief from *a* court") (emphasis added). Our conclusion that the Assembly violated the public records law when it initially denied outright the newspapers' records requests constitutes such "favorable relief from a court" that

changes the parties' legal relationship. Accordingly, the newspapers are entitled to attorney fees.[20]

¶79    The Assembly argues that, if we reverse the circuit court on the basis that the first cause of action is moot or on the merits, then the newspapers will not have obtained a judicially sanctioned change in the parties' relationship and, consequently, will not be entitled to attorney fees. However, we have concluded that several exceptions to mootness apply and that the circuit court correctly determined that the Assembly improperly applied the balancing test. Accordingly, we are not reversing either on the basis of mootness or on the merits; thus a judicially sanctioned change in the parties' relationship is appropriate, thereby entitling the newspapers to attorney fees on the first cause of action.[21]

---

[20] The newspapers in their supplemental appellate brief raise, in a conclusory manner, several arguments why this court should address the merits and why they are entitled to attorney fees, but we do not consider these arguments because our analysis as set forth in the text is dispositive in favor of the newspapers. As far as we can discern, these arguments are as follows: (1) we may affirm the circuit court's award of attorney fees on the newspapers' first cause of action concerning the Assembly's initial denial of their records requests based on certain portions of the majority/lead opinion and the dissent in *Friends of Frame Park* (which, we observe, seems to be contrary to *Piper v. Jones Dairy Farm*, 2020 WI 28, ¶22, 390 Wis. 2d 762, 940 N.W.2d 701, quoting *State v. Griep*, 2015 WI 40, ¶37 n.16, 361 Wis. 2d 657, 863 N.W.2d 567 ("Under *Marks* [*v. United States*, 430 U.S. 188, 193 (1977)], the positions of the justices who dissented from the judgment are not counted in examining the divided opinions for holdings.")); (2) regardless of whether the circuit court properly ruled on their first cause of action after the records were released, the existence of that ruling alone entitles them to attorney fees; (3) the circuit court properly reached the merits under three cases decided before *Friends of Frame Park* because of the "potential entitlement" to fees; and (4) the holding of the majority/lead opinion and concurrence in *Friends of Frame Park* is incorrect (which, we observe, runs counter to *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.")). We do not address these arguments further.

[21] The Assembly also argues that, should we affirm as to the attorney fees issue, we should "make clear that such costs must be reasonable." Such a direction is unnecessary because the statute itself directs that "the court shall award reasonable attorney fees." WIS. STAT. § 19.37(2)(a).

## IV. Subsequent Redactions

¶80 To recap, in August 2020, shortly after one of the newspapers published the article relating details of the sexual harassment incident, the Assembly's counsel sent the newspapers' counsel a letter attaching redacted versions of the three requested records. The letter included the following explanation of the release of the redacted records:

> [O]n August 7, 2020, the [Assembly] learned that the [complainant] came forward to one of the Plaintiffs in this case and shared the details of the incident with Rep. Gruszynski while, we understand, still attempting to remain anonymous. Based on this new understanding that the [complainant] no longer objects to details of the incident with Rep. Gruszynski being released to the public (so long as her name is not publicly released), the [Assembly] has reassessed the application of the balancing test to the records at issue. The [Assembly] has determined the legislative policy recognizing the strong public interest in allowing access now outweighs any interest in preserving the confidentiality of the details surrounding the events involving Representative Gruszynski.
>
> To be clear, while the [complainant] may have come forward to one of the Plaintiffs to reveal the circumstances and facts surrounding the event, it is the Assembly's [] understanding that she has not agreed to be identified by name. Therefore any records responsive to the requests at issue in this case are being redacted to protect the identity of the victim and the witnesses. In addition, three references to protected health information or otherwise confidential information have been redacted. It remains the Assembly's position that these redactions are appropriate under the balancing test, and that the public interests identified in the original response provided to your clients continue to outweigh any public interest in disclosing this information.

¶81 In response to the newspapers' challenges to certain of the redactions, the circuit court rejected the redactions in the complaint of the names of two persons who were not interviewed during the investigation, and the redaction in the investigation's report of the interview with Gruszynski of a reference purportedly

related to "protected health information."[22]  We address each category of redactions in turn.

## A.  Names in Complaint

¶82    The first category of redactions challenged by the newspapers comprised six redactions of names in the complaint.  Five of the redactions were of the names of one legislator and one staffer, neither of whom witnessed the harassment incident or was interviewed as part of the investigation.  These redactions occurred in one paragraph that describes what took place when the complainant and some of her colleagues got together after work in several different locations before the sexual harassment incident occurred.[23]  The legislator and staffer were present at some of the gatherings, the complainant and some of the interviewed witnesses were present at some of the gatherings, and Gruszynski was present at some of the gatherings.

¶83    The Assembly argues that the five redactions of the names of the legislator and staffer were necessary to protect the identity of the complainant and one of the interviewed witnesses (both of whose names were redacted).  According to the Assembly, if the names of the representative and staffer were not redacted,

---

[22] The newspapers did not challenge the other redactions, including redactions of the names of the complainant and the interviewed witnesses.

[23] We now describe the sixth redaction, which we deem the Assembly to concede the circuit court correctly rejected.  The redaction was of a legislator's name.  The complaint describes Facebook messages between Gruszynski and the complainant after the get-togethers among the complainant's colleagues and before the sexual harassment incident.  The complaint states that, in these messages, Gruszynski "seemed confused as to where he was and where he was staying that night."  Gruszynski asked to meet the complainant and she, thinking that she "would invite him to hang out to sober up," asked him "where he was," and "he said he was at the Park Inn but [REDACTED] was staying with him."  The Assembly makes no argument about this sixth redaction and, therefore, we deem the Assembly to have conceded that the circuit court correctly rejected this redaction.

someone would be able to "put two and two together" based on who was part of the group at the various locations and gatherings, and identify the redacted names of the complainant and the interviewed witness.

¶84    We agree with the circuit court that the Assembly's reasons are too attenuated and speculative, and describe a possibility of identification that is too remote, to suffice to outweigh the public interest in disclosure. First, neither of the persons whose redacted names are challenged were present for the later-occurring sexual harassment incident. Second, the shifting make-up of the groups at the various gatherings before that incident undermines whatever force the Assembly's reasoning might have.

¶85    In sum, we conclude that the Assembly unlawfully made the challenged six redactions of names.

### B.  Protected Health Information

¶86    The second category of redactions challenged by the newspapers comprised one reference in the investigation's report of the interview with Gruszynski to information purportedly regarding "protected health information." The challenged redaction occurred at the end of a sentence. That sentence states that Gruszynski explained that, "based upon what he did, he has stopped drinking altogether and has not dr[u]nk since October 30th, and [REDACTED]."

¶87    As the circuit court noted, the August 12, 2020, letter by the Assembly's counsel that accompanied the release of the redacted records offered no rationale for this challenged redaction other than describing it as "protected health information." The Assembly notes that it "expanded on its reasoning for this redaction" in a subsequent letter provided to the newspapers on September 8, 2020.

The Assembly reiterates that reasoning on appeal. That reasoning boils down to the proposition that the strong public interest in maintaining the privacy and confidentiality of private health information outweighed any interest in its disclosure.

¶88 In explaining this reasoning, the Assembly acknowledges that the redacted information does not come within the scope of the state and federal statutes that protect the confidentiality of patient health care records prepared by health care providers. Nonetheless, the Assembly argues that these and other statutes, specifically WIS. STAT. §§ 19.35(1)(a) (public records law) and 19.85(1)(f) (open meetings law), which maintain the confidentiality of medical information, "are indicative of the public policy and the strong privacy protections that exist for an individual's health information."[24] Moreover, the Assembly argues private health information that is relevant to investigations would not be readily shared by public officials when they are investigated or by complainants or witnesses if they could not count on that information being kept confidential.

¶89 The newspapers make two principal arguments that the redacted information should have been disclosed. First, the newspapers argue that the redacted information was already known, through Gruszynski's own statement released when the Assembly Democratic Leadership released its statement in December 2019, as well as contemporaneous media reports. Second, the newspapers argue that the redacted information was a "material" fact that "[wa]s closely connected to" Gruszynski's misconduct and to his response to that

---

[24] WISCONSIN STAT. § 19.35(1)(a) provides that the exemptions to the open meeting requirement in WIS. STAT. § 19.85 are indicative of the public policy interests that might exempt a record from disclosure under the balancing test. Section 19.85(1)(f), in turn, provides an exemption to the open meetings law for the purpose of "[c]onsidering financial, *medical*, social or personal histories … of specific persons[.]" (Emphasis added.)

misconduct, and that the public has "a high interest in" knowing of his response. Notably, the newspapers do not argue that the redacted information was not private health information, and, therefore, we accept this as a concession that it was. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (explaining that "[t]his court has held that respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute").

¶90 The newspapers' arguments are not persuasive, for at least the following reasons. As the Assembly notes, the specific information that was redacted was not publicly known, and the unredacted record so confirms. In addition, the unredacted record did include information, closely connected to the misconduct, regarding Gruszynski's response to that misconduct, specifically that "he has stopped drinking altogether and has not dr[u]nk since October 30th." Thus, the strong public interest in knowing how a public official responded to an investigation into a complaint of misconduct and what information was before the investigating entity in determining any disciplinary or remedial action, was served here despite the redaction. Finally, the newspapers do not respond at all to the Assembly's argument based on WIS. STAT. §§ 19.35(1) and 19.85(1)(f), which together "reflect strong public policy interests in nondisclosure" of certain issues, including personal health information, that "may allow governmental bodies to meet in closed session" and "that could also serve as a basis to withhold records." *Friends of Frame Park*, 403 Wis. 2d 1, ¶31.

¶91 In sum, we conclude that the Assembly has sufficiently shown that the public interest in the confidentiality of private health information in this case outweighed the public interest in disclosure of that information. For that reason, the circuit court incorrectly rejected this redaction.

### C. *Attorney Fees*

¶92 The Assembly acknowledges that, if the newspapers succeed on their second cause of action regarding the redactions, then they will have prevailed as to that cause of action under the *Friends of Frame Park* test and will be entitled to attorney fees. Because we have concluded that the newspapers successfully challenged all but one category of redactions, they are entitled to reasonable attorney fees on that claim, to be determined by the circuit court on remand.

### CONCLUSION

¶93 For all the reasons stated, we conclude that the Assembly violated the public records law when it initially denied outright the newspapers' public records requests. We separately conclude that when, eight months after initially denying the newspapers' public records requests and five months after the newspapers filed this mandamus action seeking release of the records, the Assembly released the records with redactions, it violated the public records law as to certain of those redactions except as to one reference to private health information. We also conclude that the newspapers are entitled to attorney fees under the statutory prevailing-party test articulated in *Friends of Frame Park* as to both sets of violations. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

No.    2021AP1196(CD)

¶94    FITZPATRICK, J. (*concurring in part; dissenting in part*).

¶95    I concur in the analysis in ¶¶80-91 and the first sentence of ¶92 of the majority opinion.  I also concur in the award of attorney fees and costs to the newspapers[1] for their successful challenge in Count 2 of the amended complaint to redactions of the produced records made by the Assembly.[2]

¶96    For three main reasons I part ways with my colleagues in the majority, and respectfully dissent from their analysis, concerning the award of attorney fees and costs to the newspapers related to Count 1 of the amended complaint ("Count 1").  First, the majority opinion misconstrues and misapplies the test set forth in *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263.[3]  Second, the majority opinion errs in construing the *Friends of Frame Park* concurrence and lead opinion as eviscerating the *Friends of Frame Park* test.  Third, the majority opinion errs in concluding that exceptions to the mootness doctrine apply in these circumstances.

---

[1]  I use the same designation for the plaintiffs-respondents as does the majority opinion.

[2]  I use the same designation for the defendants-appellants as does the majority opinion.

[3]  I refer to the test our supreme court set out at, among other places, *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶3, 403 Wis. 2d 1, 976 N.W.2d 263, regarding an award of attorney fees pursuant to WIS. STAT. § 19.37(2)(a) (2021-22) as the "*Friends of Frame Park* test" or similar phrases.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## I. The Majority Opinion Misconstrues and Misapplies the *Friends of Frame Park* Test.

¶97 WISCONSIN STAT. § 19.37(2)(a), a fee-shifting provision in the public records law, is at the heart of this dispute. As pertinent here, it states that a court "shall award reasonable attorney fees [and costs] … to the requester if the requester prevails in whole or in substantial part in [a mandamus] action filed under sub. (1)."[4] Sec. 19.37(2)(a). In July 2022, our supreme court held that "to 'prevail[] in whole or in substantial part' means the party must obtain a judicially sanctioned change in the parties' legal relationship." *Friends of Frame Park*, 403 Wis. 2d 1, ¶¶3, 38. In doing so a majority of our supreme court relied on, and adopted the analysis in, the United States Supreme Court opinion, *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). *See, e.g.*, *Friends of Frame Park*, 403 Wis. 2d 1, ¶¶15, 21, 24 (lead op.), ¶41 (Bradley, R.G., J., concurring).[5]

¶98 The analysis in that U.S. Supreme Court opinion brings to the fore a significant error in the majority opinion. A "prevailing party" is "a party in whose favor a judgment is rendered" and is "one who has been awarded some relief by the court." *Buckhannon*, 532 U.S. at 603. "Never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'" *Id.* at 606 (citation omitted). In a similar vein, the Court stated, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit,

---

[4] "Requester" is defined at WIS. STAT. § 19.32(3), and there is no dispute that the newspapers come within that definition.

[5] An introductory note to *Friends of Frame Park*, 403 Wis. 2d at 4, explains that Chief Justice Ziegler and Justice Roggensack joined ¶¶13-24 of Justice Hagedorn's lead opinion.

lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. Of particular importance to this case, the Court held that a party is not prevailing if the party only "acquired a judicial pronouncement that the defendant has violated [a law] unaccompanied by '*judicial* relief.'" *Id.* at 606 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).[6]

¶99    The Court's opinion in *Hewitt* concerns the meaning of "prevailing party" in the context of an award of attorney fees and, as noted, is an opinion on which the *Buckhannon* analysis relies. *Hewitt*, 482 U.S. at 757. In the *Hewitt* lawsuit, the court of appeals stated that its ruling that Helms' rights were violated was "a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions were unconstitutional and which will serve as a standard of conduct to guide prison officials in the future." *Id.* at 759. The Supreme Court held that the federal court of appeals erred in treating its ruling that "Helms' misconduct conviction was unconstitutional as 'a form of judicial relief'" for the reason that the

---

[6] In an unpublished judge-authored opinion, *see* WIS. STAT. RULE 809.23(3)(b), this court recognized and applied the analysis in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001):

> Thus, under the holding in *Buckhannon*, before Siddique would be entitled to an award of attorney fees under the WEAJA, he must have prevailed by securing a judgment on the merits in this case—he has not done so. The Board's counsel advised the trial court that the Board would be voiding the disciplinary sanctions against Siddique in the interest of preserving the time and resources of the court and the parties because Siddique was no longer a student and because the only remaining discipline was the community service. UWM then unilaterally voided the disciplinary sanction against Siddique and removed it from his school record. As the *Buckhannon* court stated, "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."

*Siddique v. Board of Regents Univ. of Wis. Sys.*, No. 2017AP1443, unpublished slip op. ¶32 (WI App Dec. 11, 2018) (citation omitted).

court of appeals "granted no relief of its own." *Id.* at 760. Rather, "[t]he only 'relief' he received was the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *Id.* at 762. Accordingly, the Court rejected the argument that the court of appeals' ruling that Helms' rights were violated was itself a form of judicial relief. The Court further held, as germane to the dispute now before this court:

> To suggest such an equivalency [between a judicial pronouncement and a grant of judicial relief] is to lose sight of the nature of the judicial process. In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant…. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Id.* at 761. The Court also stated: "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 760.[7] To sum up, the Court held that "a favorable judicial statement of law in the course of litigation … does not suffice to render [plaintiff] a 'prevailing party.' Any other result strains both the statutory language and common sense." *Id.* at 763.

¶100 With those authorities in mind, I next discuss that, although the majority opinion agrees that the *Friends of Frame Park* test applies here (Majority,

---

[7] This statement from *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), was quoted with approval in *Buckhannon*, 532 U.S. at 603-04.

¶¶20-23), the majority opinion misconstrues and misapplies the *Friends of Frame Park* test.

¶101   The newspapers' initial complaint was a mandamus action which demanded that the Assembly produce the requested records.  (Majority, ¶10).  The redacted records were produced after the complainant[8] gave an interview to one of the newspapers about the events.  (Majority, ¶11).  In briefing in this court, the newspapers concede that the Assembly produced the redacted records "without prompting."  Two months later, the newspapers filed their amended complaint as another mandamus action under WIS. STAT. § 19.37(1)(a).[9]  Count 1 concerned only the Assembly's delay in producing the requested records.  (Majority, ¶13).

¶102   The majority opinion determines that the Assembly violated the public records law by delaying production of the records.  However, no more responsive records can be produced pursuant to Count 1 because no party takes the position that there is any responsive record left to produce.  (Majority, ¶12 n.4).  Further, no injunction has been granted against the Assembly concerning production of the records.  The newspapers have nothing in the form of judicial remedy or relief in their favor regarding production of those records.  All the newspapers have concerning Count 1 is a favorable judicial statement from the majority of this panel

---

[8] I adopt the same designation that the majority opinion uses for the person who was inappropriately contacted by the legislator.

[9] In a public records case, a request for an award of attorney fees pursuant to WIS. STAT. § 19.37(2)(a), as the newspapers request here for Count 1, must be brought exclusively through a mandamus action pursuant to § 19.37(1)(a). *State v. Stanley*, 2012 WI App 42, ¶61, 340 Wis. 2d 663, 814 N.W.2d 867; *see also* *Capital Times Co. v. Doyle*, 2011 WI App 137, ¶6, 337 Wis. 2d 544, 807 N.W.2d 666; *State v. Zien*, 2008 WI App 153, ¶¶23, 34-36, 314 Wis. 2d 340, 761 N.W.2d 15.

5

that the records should have been produced earlier.[10] The whole point of a mandamus action, such as the newspapers filed regarding Count 1, is "to compel public officers 'to perform duties arising out of their office and presently due to be performed.'" *Pasko v. City of Milwaukee*, 2002 WI 33, ¶24, 252 Wis. 2d 1, 643 N.W.2d 72 (citation omitted). But, neither the majority opinion nor the newspapers point to any judicial remedy or relief granted concerning Count 1. As a result, the newspapers have not met the requirements of the *Friends of Frame Park* test, *Buckhannon*, and *Hewitt* so as to be eligible for an attorney fees award for Count 1.

¶103 The majority opinion is explicit that its "determination" or ruling (referred to by the U.S. Supreme Court as a "judicial statement" or "judicial pronouncement," *Hewitt*, 482 U.S. at 761, 763) that the Assembly delayed release of the records is the sole basis for the purported satisfaction of the *Friends of Frame Park* test. According to the majority opinion, that judicial statement is itself the "change in the parties' legal relationship" required by the *Friends of Frame Park*

---

[10] As is established in the record, the newspapers are not seeking punitive damages from the Assembly regarding Count 1. That was confirmed in an order of the circuit court dated July 26, 2021, which approved a stipulation of the parties. The newspapers have filed no cross-appeal concerning that order. Accordingly, I do not agree with any implicit assertion in the majority opinion that a request for punitive damages is open or pending at this time in this case. (*See* Majority, ¶1 n.2).

Further, the majority opinion does not assert that the circuit court's order concerning Count 2 of the amended complaint, or the fact that we (mostly) affirm that order, makes a difference to the analysis about whether the newspapers can be awarded attorney fees for Count 1. Count 1 concerned delay in producing the records and is separate legally and factually from the analysis regarding redactions of the records and Count 2.

test, even though the newspapers receive no favorable judicial remedy or relief related to that determination.[11]

¶104　The controlling points, as seen by the majority opinion, are that the Assembly violated the public records law in delaying release of the records to the newspapers, and the majority opinion has made a ruling or judicial statement to that effect. From those, the majority opinion decides that the *Friends of Frame Park* test has been satisfied and attorney fees must be awarded regarding Count 1.

---

[11] The majority opinion is consistent in its reasoning about the supposed satisfaction of the *Friends of Frame Park* test. In ¶3, the majority opinion concludes that the Assembly violated the public records law when it denied release of the records initially and delayed release. The majority opinion then states: "Because that determination causes a 'change in the parties' legal relationship,' … we also conclude that the newspapers are entitled to attorney fees …." Paragraph 22 also concludes that the Assembly violated the public records law when it initially denied release of the records and delayed release. That paragraph then states: "Because that determination causes a 'change in the parties' legal relationship,' *Friends of Frame Park*, 403 Wis. 2d 1, ¶3, we further conclude that the newspapers are entitled to attorney fees on their challenge to the Assembly's initial response." (Majority, ¶22).

　　In ¶43, the majority opinion reasons:

> So here, a decision on the merits of the newspapers' challenge to the Assembly's initial outright denial of their records requests will have a practical effect on the newspapers' entitlement to attorney fees. More specifically, if a court were to rule in favor of the newspapers on this challenge, then the newspapers would meet the prevailing-party test stated in our supreme court's opinion in *Friends of Frame Park*. *Friends of Frame Park*, 403 Wis. 2d 1, ¶3 (the test is a "judicially sanctioned change in the parties' legal relationship").

(Majority, ¶43). In ¶78, the majority opinion states, "Our conclusion that the Assembly violated the public records law when it initially denied outright the newspapers' records requests constitutes such 'favorable relief from a court' that changes the parties' legal relationship" and satisfies the *Friends of Frame Park* test. "Accordingly, the newspapers are entitled to attorney fees." (Majority, ¶78).

¶105　According to the majority opinion, the following facts are irrelevant to the analysis: there is no court order regarding the production of the records that preceded and caused the Assembly's release of the records to the newspapers; and there has been no judicial remedy or relief, as defined in the case law, awarded to the newspapers based on the Assembly's delay in producing the records. Those are fatal flaws in the majority opinion's reasoning. As the *Friends of Frame Park* test and the U.S. Supreme Court opinions undergirding that test establish, a judicial statement from a court is not sufficient in these circumstances. There can be no award of attorney fees unless there is first a grant of judicial remedy or relief concerning, in this case, the delay in production of the records. The premises of the majority opinion's analysis regarding the award of attorney fees for Count 1 can never be reconciled with the broad, clear, and explicit provisions of the *Friends of Frame Park* test and the case law on which that test is based, *Buckhannon* and *Hewitt*.[12]

¶106　The majority opinion misconstrues and misapplies the test set forth in *Friends of Frame Park* as explained in *Buckhannon* and *Hewitt*. The majority opinion's analysis draws a straight, causal line from its ruling about delay in producing the records (which as noted grants no judicial remedy or relief to the newspapers related to the production of the records) to its decision to award attorney fees for Count 1. That is an error because the majority opinion misses a mandated step in the process for an award of attorney fees in this situation. There must first be a ruling about the delay in production of the records that also grants the

---

[12] Accordingly, I do not join the second sentence of ¶92 of the majority opinion. That sentence leads to the conclusion that it is this court's ruling on the redactions that allows an attorney fees award under WIS. STAT. § 19.37(2)(a) and the *Friends of Frame Park* test. That is incorrect. The newspapers are awarded attorney fees for Count 2 because the newspapers were granted judicial relief that the newspapers did not have previously—an order to the Assembly to produce unredacted records (with one small exception concerning one redaction).

8

newspapers judicial remedy or relief based on that ruling. Only after that occurs is the collateral question of an attorney fees award for Count 1 taken up because only after judicial remedy or relief has been granted has there been a change in the parties' legal relationship as delineated in *Friends of Frame Park*, *Buckhannon*, and *Hewitt*.[13]

¶107 Further consideration of this issue confirms the error in the majority opinion's discussion regarding an award of attorney fees for Count 1. The test stated in the opinion of this court in *Friends of Frame Park, U.A. v. City of Waukesha*, 2020 WI App 61, 394 Wis. 2d 387, 950 N.W.2d 831, is summarized in the majority opinion:

> [This] court stated that the requesting party is entitled to attorney fees when "it demonstrates a violation of [the public records law]; that is, an unreasonable delay caused by the improper reliance on an exception." *Id.* In other words, when an authority releases a requested record because a public records exception is no longer applicable—but before a court rules on the authority's reliance on that exception in initially denying the request—the requesting party is entitled to attorney fees when a court determines that the authority improperly initially denied the request in violation of the public records law.

---

[13] In addition, the fact that an appeal was filed concerning the circuit court's ruling on Count 1 cannot by itself be a basis to conclude that there was a judicially sanctioned change in the parties' relationship. If the majority opinion takes that position, such a result defies any fair reading of the *Friends of Frame Park* test. It is circular reasoning that cannot be reconciled with the *Friends of Frame Park* test to state that this court affirming the circuit court's award of attorney fees for Count 1 is in itself the basis to conclude that there has been a judicially sanctioned change in the parties' legal relationship.

(Majority, ¶26). That test set forth by this court was squarely rejected by our supreme court in its reversal of that opinion.[14] The majority opinion protests that it is applying our supreme court's *Friends of Frame Park* test. However, the lines quoted immediately above, which summarize the rejected court of appeals *Friends of Frame Park* analysis, are, for all practical purposes, the same analysis the majority opinion uses to award attorney fees for Count 1. That analysis and result cannot be reconciled with the reversal of this court's opinion in *Friends of Frame Park*, the *Friends of Frame Park* test, the holdings of *Buckhannon* and *Hewitt*, and the analyses of the lead opinion and concurrence in *Friends of Frame Park*.[15]

¶108   In sum, the majority opinion has misconstrued and misapplied the *Friends of Frame Park* test.

## II.  The *Friends of Frame Park* Concurrence and Lead Opinions Are Construed by the Majority Opinion as Eviscerating the Test Set Forth in *Friends of Frame Park*.

¶109   In *Friends of Frame Park*, our supreme court explicitly established a broad and clear test which controls in this situation. It is not within the authority of this court to, in effect, overrule the *Friends of Frame Park* test and create a different

---

[14] As well, the majority opinion does not dispute that the causal nexus test previously used by this court regarding attorney fees requests in public records actions has been rejected by a majority of our supreme court. *See Friends of Frame Park*, 403 Wis. 2d 1, ¶¶3, 4, 15, 22-25, 41, 43, 69-101. As a result, the causal nexus test cannot be the basis for an award of attorney fees for Count 1.

[15] I agree with the majority opinion that several arguments from the newspapers are conclusory and difficult to discern, and I conclude that those arguments fail. (Majority, ¶78 n.20). The newspapers argue in their supplemental briefing to this court based on a premise that has been firmly rejected by our supreme court regarding the interpretations of its opinions; more specifically, the newspapers try to mix and match votes from the concurrence and the dissent in *Friends of Frame Park* in an attempt to cobble together a majority opinion. The newspapers also attempt to argue that the circuit court's decision on the award of attorney fees for Count 1 that pre-dates the *Friends of Frame Park* test is itself a basis to award attorney fees regardless of the test in *Friends of Frame Park*.

test. ***Cook v. Cook***, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."). Regardless, under the rubric of the doctrine of mootness and its exceptions, the majority opinion concludes that multiple scenarios concerning mootness, and its exceptions, are now open to consideration so as to undermine the ***Friends of Frame Park*** test. I cannot join the majority opinion concerning Count 1 because it exceeds this court's authority and creates exceptions to a broad rule set forth by our supreme court when the supreme court has not done so.

¶110 In its attempt to avoid the ***Friends of Frame Park*** test, the majority opinion misstates the analysis of the concurrence in that opinion. The majority opinion states in pertinent part:

> However, the concurrence also acknowledged in a footnote that "Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed. We may, however, choose to address moot issues in 'exceptional or compelling circumstances.'" [***Friends of Frame Park***, 403 Wis. 2d 1], ¶43 n.9 (quoting ***Portage County v. J.W.K.***, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509) (Bradley, R.G., J., concurring). The concurrence did not qualify this exceptions-to-mootness rule so as to preclude a merits determination, in the same way that the concurrence qualified the prevailing-party test. *See id.* Rather, the concurrence stated only that when an action is moot no court "needed to address the merits." *Id.* The concurrence did not explicitly address whether any of the exceptions to mootness applied in that case to warrant considering the merits and the attorney fees issue. The only reasonable inference is that the concurring justices concluded that no exceptions to mootness applied.
>
> … The concurrence implicitly reasoned that no exceptions to mootness warranted addressing the merits of the public records action.

(Majority, ¶¶33, 34). No principled reading of the *Friends of Frame Park* concurrence can come to those conclusions. In simply recognizing that the mootness doctrine and its exceptions exist, the concurrence in *Friends of Frame Park* did not accept that the doctrine and its exceptions create major exceptions to the broad and clear *Friends of Frame Park* test. As only two examples of many, the concurrence stated the following: "Friends did not obtain any favorable relief in court. This case was moot almost as soon as it began. We should say so, and overturn court of appeals precedent crafted to advance the policy preferences of judges at the expense of the law's text." *Friends of Frame Park*, 403 Wis. 2d 1, ¶101 (Bradley, R.G., J., concurring). "Determining a plaintiff's entitlement to attorney fees would require litigating the merits of a moot public records case, but the United States Supreme Court has cautioned '[a] request for attorney's fees should not result in a second major litigation[.]'" *Id.* ¶99 (quoting *Buckhannon*, 532 U.S. at 609-10). There can be no question that the concurrence did not make a part of its discussion the doctrine of mootness and its exceptions so as to allow deviations from the *Friends of Frame Park* test.

¶111 In a similar vein, the majority opinion turns the *Friends of Frame Park* test inside out by attempting to divine an "implicit[]" holding of Justice Hagedorn's lead opinion in *Friends of Frame Park*. (Majority, ¶29). The *Friends of Frame Park* lead opinion considered the question of whether the authority[16] in that case improperly delayed production of the record under the public records law. However, that fact does not lead to the conclusion that the *Friends of Frame Park* test is now riddled with holes as the majority opinion, for all practical purposes, concludes. The most that can be said about the lead opinion considering that

---

[16] The Assembly is an "authority" as defined in WIS. STAT. § 19.32(1).

question is that, for the sake of efficiency, Justice Hagedorn took a look at the facts and found no violation of the public records law. In that way, he did not have to consider whether a mootness exception could ever apply to the *Friends of Frame Park* test.

¶112 Moreover, it is important to consider another point made in the *Friends of Frame Park* lead opinion. Paragraphs 4 and 25 of the lead opinion establish that the justice has reservations about whether any changes to the *Friends of Frame Park* test could ever be crafted in order to allow a requester to obtain relief under the *Friends of Frame Park* test when the records are produced voluntarily without a court order. *Id.*, ¶¶4, 25 ("Without a causation-based theory governing the meaning of prevailing party under the statute, however, it is unclear whether voluntary compliance following the filing of a lawsuit could still allow a requester to pursue fees."). In other words, the lead opinion recognizes that, for a mootness exception to ever apply in these and similar circumstances, a change in the *Friends of Frame Park* test would then be required.

¶113 As it stands, there are no exceptions to the broad and clear rule in the *Friends of Frame Park* test. The most that can reasonably be read into the lead opinion is that maybe, some day, with unique enough facts, our supreme court will consider whether there might be an exception to the mootness doctrine that applies when an authority produces a record after a lawsuit has started but before there is an order for the production of the record. If so, it follows from the lead opinion that the *Friends of Frame Park* test will have to be revamped. And the next point is important. If that day should ever come, it will not be up to this court to craft changes to the supreme court's *Friends of Frame Park* test. It is solely up to the Wisconsin Supreme Court to consider, and create, any changes to the *Friends of Frame Park* test. This is so because creating an exception to the *Friends of Frame*

***Park*** test (as the majority opinion does here) is to overrule the test set forth in ***Friends of Frame Park***. Obviously, this court has no such authority to do so. ***Cook***, 208 Wis. 2d at 189.[17]

### III. The Majority Opinion Errs in Concluding that Exceptions to the Mootness Doctrine Apply in These Circumstances.

¶114   Moot issues are to be taken up only in "exceptional or compelling circumstances." ***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶12, 386 Wis. 2d 672, 927 N.W.2d 509. For the reasons already stated, it is necessarily the case that it is within the authority of the supreme court, and not this court, to determine if there are "exceptional or compelling circumstances" to apply a mootness exception such that the ***Friends of Frame Park*** test is revamped. As I next discuss, the majority opinion errs because its analysis of mootness exceptions evades our supreme court's direction in the ***Friends of Frame Park*** test.

¶115   The mootness exceptions considered by the majority opinion are the following:

> [W]e may overlook mootness if the issue falls within one of five exceptions: (1) the issue is of great public importance; … (3) the issue arises often and a decision from [the appellate] court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

***Marathon Cnty. v. D.K.***, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.

---

[17] In an attempt to bolster its analysis, the majority opinion misstates an argument of the Assembly. A fair reading of the briefing from the Assembly does not lead to the conclusion that the Assembly agrees that mootness exceptions must be applied in this case. The Assembly takes up the doctrine of mootness and its exceptions as an alternative argument rather than arguing solely that the ***Friends of Frame Park*** test requires denial of the attorney fees request for Count 1. Arguing in the alternative is not a concession that the mootness doctrine or any of its exceptions apply in these circumstances.

14

¶116 Paragraphs 46-50 of the majority opinion assert that the delayed release of these records is of "great public importance." The Declaration of Policy set forth by the Wisconsin legislature regarding the public records law states in pertinent part:

> [I]t is … the public policy of this state that all persons are *entitled to the greatest possible information* regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be *an essential function of a representative government* and *an integral part of the routine duties* of officers and employees whose responsibility it is to provide such information. To that end, [WIS. STAT. §§] 19.32 to 19.37 shall be construed in every instance with *a presumption of complete public access*, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and *only in an exceptional case may access be denied*.

WIS. STAT. § 19.31 (emphasis added). The parties agree that no statutory or common law exceptions in the public records law apply here, so the Assembly applied the public policy balancing test. *See **Democratic Party of Wis. v. DOJ**,* 2016 WI 100, ¶10, 372 Wis. 2d 460, 888 N.W.2d 584. With that Declaration as a guiding light in the application of the balancing test, it is hard to conceive of any issue about the delay of production of a requested record that would not be of "great public importance." Accordingly, the majority opinion causes the broad and clear test set forth in ***Friends of Frame Park*** from our supreme court to be nullified by this mootness exception.

¶117 The other mootness exceptions the majority opinion considers are really, in this situation, the same test. *See **D.K.**,* 390 Wis. 2d 50, ¶19. Each test consists of two parts. The first part of each of those three tests concerns the recurrence of the issue. *Id.*, ¶19 ("the issue arises often[,] … the issue is likely to

15

recur[,] … [and] … the issue is likely of repetition"). The second part of each test is whether a decision from a court is necessary. *Id.* ("a decision from this court is essential[,] … [this issue] must be resolved to avoid uncertainty[,] … [and] … [the issue] evades review"). As phrased by the majority opinion, this collective test is considered at such a high level of abstraction that the result is preordained in favor of the newspapers or any future requester.

¶118 Paragraph 47 of the majority opinion states that this issue will occur again for two reasons: the Assembly did not address why redactions in the records were insufficient; and the Assembly did not apply a fact-specific inquiry as required by the public records law. At that broad level of generality, of course this issue is likely to recur. Virtually every time the balancing test is done by an authority regarding the release of a record, those two factors are in play and are disputed by one of the parties. Properly considered, the first question of this collective test analyzes whether these particular facts (or anything similar) are likely to recur. Here, the underlying facts (while disturbing regarding the actions of the legislator towards the complainant) are unique. This situation is made even more unique because of the production of the records after the complainant went to the press about these events. The issue related to this particular case is unlikely to recur.

¶119 As noted, the second question of this collective test is why this particular issue must be resolved in this case even though it is moot. Paragraphs 47 and 49 of the majority opinion state that the majority opinion will guide how a government authority handles these issues in the future. But, there is nothing ground-breaking in the majority opinion on this issue, and the handling of these matters has been the subject of numerous opinions. The majority opinion itself confirms the point by relying on a large number of opinions about the public records law. The majority opinion does not mark a significant trend in public records law.

The practical effect on public records cases based on the delay discussion in the majority opinion will be very limited. This court should not take up moot issues unless further guidance is required for circuit courts and will have a real impact upon the decision-making in those courts.

¶120 In sum, the majority opinion analysis regarding mootness exceptions negates the statement of the law set forth in the *Friends of Frame Park* test.

## CONCLUSION

¶121 For those reasons, I concur in part and respectfully dissent in part.