# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 8, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2076**

STATE OF WISCONSIN

Cir. Ct. No. 2019PR14

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE JOSEPH L. SIMEK REVOCABLE TRUST:

DANIEL NOZISKA AND WILLIAM NOZISKA,

APPELLANTS,

V.

ROBERT ZIMMERMAN,

RESPONDENT.

APPEAL from a judgment of the circuit court for Taylor County: ANN KNOX-BAUER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Daniel and William Noziska appeal a circuit court decision granting summary judgment to Robert Zimmerman, the trustee of a trust of which the Noziskas are beneficiaries.  The court concluded that the Noziskas' breach of trust claim against Zimmerman was untimely filed under WIS. STAT. § 701.1005 (2021-22).[1]  For the reasons that follow, we agree and affirm the court's judgment in favor of Zimmerman.

## BACKGROUND

¶2     Joseph L. Simek died in February 2013, leaving a will that bequeathed all of his remaining property to a trust.  The Noziskas were both listed as beneficiaries of the trust, as were three of Simek's children and Ernest Olmstead, Simek's former business partner.  The trust stated that the Noziskas would each receive a 9% interest in Simek's "interest in Captain Morgan's Vacation Beach Club Limited," located in Belize.

¶3     Shortly after Simek's death, Zimmerman learned that there was confusion regarding the beach club entity referred to in the trust.  Although there were a number of entities in Belize with similar names to that in which Simek had an interest (hereinafter, Captain Morgan's entities),[2] there was no entity by the name listed in the trust.  Nor was there, according to Zimmerman, an entity by that name "which [could] be specifically and with certainty identified as having been the entity as to which [the Noziskas were] entitled to receive an interest."

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] It is unclear from the record what the names of the entities were or how many such entities existed.

¶4    Zimmerman resolved this issue by giving each of the Noziskas a 19.56% interest in all of the Captain Morgan's entities after Simek's children disclaimed their interests.  By March 2013, Zimmerman hired an attorney in Belize—Magali Young—to assist with the administration of the trust in Belize. That same year, Zimmerman and Young commenced a probate action in Belize to effectuate the transfers of the interests in the Captain Morgan's entities to the Noziskas.

¶5    In January 2014, Daniel emailed Zimmerman and asked to have the "inheritance resolved" and requested "basic information necessary to make an informed decision[,] such as the legal name[s] of the" Captain Morgan's entities. Zimmerman emailed Daniel in return and informed him of the 19.56% interest in the Captain Morgan's entities that he and William would receive.  Zimmerman also stated that he "sent a number of packets to [Young] to assist with the … probate and complete the transfer of ownership" and that he "assume[d] [Young was] in the process of making th[ose] transfers."

¶6    In May 2016, Young sent the Noziskas the necessary paperwork to register their interests in the Captain Morgan's entities.[3]  According to the Noziskas, the paperwork was never completed—and the transfer was therefore never completed—because "the documents provided by Young contained discrepancies in the names of the entities and improper share allocation."  Daniel asserted that the Noziskas never received "corrected" copies of the documents.

---

[3] Zimmerman contends that the transfer of documents occurred in 2014.  The circuit court also found this fact to be true, although it was disputed in the documents submitted for summary judgment.  We will assume for the sake of this opinion that the documents were not sent until May 2016, but we note that this particular factual dispute is not material.  *See* WIS. STAT. § 802.08(2).

¶7    In a letter dated March 15, 2017, Daniel requested from Zimmerman information related to the trust, including "[a]nnual trust accountings" since Simek's death and the "basis and supporting documents for the valuation of all Captain Morgan's[ entities'] assets entered in the trust inventory." Daniel informed Zimmerman that he and William sought "an immediate remedy of the absence of reasonable information furnished to [them] about Captain Morgan's" entities and that they would "not hesitate to take additional steps to redress th[e] situation."

¶8    Zimmerman responded to Daniel in a March 23, 2017 letter. Zimmerman informed Daniel that he believed Daniel was "directing [his] request to the wrong person," and he should instead request the information from Olmstead. Zimmerman wrote, "I am not sure why you are putting me in the middle of this when, as you know, I have made numerous attempts to try to get you the information you have requested." Zimmerman added:

> I am also enclosing [the assignment]. I provided this document to [Young] once the family [members] disclaimed their interest[s] to transfer the ownership in the Belize entities to [Olmstead], you[,] and [William]. I made this [a]ssignment pursuant to the terms of the [t]rust to distribute to you as a beneficiary of that [t]rust. This is the only asset in the [t]rust you are entitled to which was a percentage ownership in these Belizean entities. I instructed [Young] to transfer the shares of these companies to the parties listed in the [a]ssignment. As I understand it, this would have been done except that you and [William] will not cooperate to have the shares properly put into your name. *As far as I am concerned, when I made that [a]ssignment, I performed my duties as a [t]rustee and distributed to you, [William, and Olmstead] the assets you were entitled to receive from the [t]rust.* You are not entitled to receive any further assets from the [t]rust.
>
>    ….

4

> I hope this information is helpful to you. As I have previously suggested to you, I highly recommend that you take ownership as you were supposed to of the Belizean entities so that you are then legally considered a shareholder and can make demands on [Olmstead] for information you may need. I would provide you additional information regarding the entities in Belize over and above what you have been provided if I had it. Frankly, I have provided to you all of the same financial information I have, so I cannot provide you anything further. I am also enclosing a copy of an email to you dated January 15, 2014, wherein I told you I had transferred the ownership to you as provided in [Simek's t]rust.

(Emphasis added.) Zimmerman also informed Daniel that his "personal opinion of the net value of the" Captain Morgan's entities "has always been close to zero and may even be negative."

¶9      From March 2017 to August 2019, Zimmerman and the Noziskas continued communicating regarding the Captain Morgan's entities. In October 2017, the Noziskas' counsel sent a letter to Young requesting more information on the Captain Morgan's entities. Later that month, Zimmerman contacted the Noziskas' counsel via email and stated that their previous letter was forwarded to Zimmerman and that Young resigned as the "agent and administrator" of the trust because Young believed that Zimmerman had incorrectly "implied that she had financial information for the Belize companies." Zimmerman also gave updated financial information regarding the Captain Morgan's entities. In June 2018, Zimmerman retained a new attorney in Belize to act as representative for Simek's estate in Belize and to transfer the shares of the Captain Morgan's entities to the Noziskas.

¶10      In March 2019, Zimmerman emailed the Noziskas' counsel and stated that he had not received any update from the new attorney in Belize, but he learned that there had been an asset sale of the Captain Morgan's entities. In June

2019, the Noziskas received a copy of the asset sale and learned that the sale had taken place in February 2017 and that the Captain Morgan's entities were sold for $2.5 million. The asset sale documents included three Captain Morgan's entities, but, according to the Noziskas, the documents did not include the name of an entity that Young and Zimmerman "previously represented to [them] was part of their interest bequeathed to them in the [t]rust."

¶11 In August 2019, the Noziskas raised concerns with Zimmerman regarding the asset sale. That same month, Zimmerman emailed the Noziskas and again stated that his "duty as trustee was to transfer ownership in 'Captain Morgan's Vacation Beach Club' which [he] attempted to do many years ago and the Noziska's [sic] refused to cooperate or take ownership." Zimmerman also stated that he did not "see [his] duty as doing all the investigation and gathering miscellaneous assets or even trying to get financial information for the Noziskas."

¶12 In December 2019, the Noziskas filed with the circuit court a "petition for determination of breach of fiduciary duty and breach of trust and appointment of additional trustee." They asked the court to find that Zimmerman "committed material breaches of trust" under WIS. STAT. § 701.1001(1). Zimmerman filed a motion for summary judgment and dismissal of the petition on the grounds that the petition was untimely filed pursuant to WIS. STAT. § 701.1005. The court granted Zimmerman's motion, finding that his March 2017 letter was a "report" under § 701.1005 and, therefore, the Noziskas' breach of trust claim was untimely filed. The court dismissed the Noziskas' petition.

¶13 The Noziskas now appeal. Additional facts will be provided below as necessary.

**DISCUSSION**

¶14     We review a circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. *Wisconsin State J. v. Blazel*, 2023 WI App 18, ¶16, 407 Wis. 2d 472, 991 N.W.2d 450.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  Additionally, this case requires us to interpret a statute and apply it to the facts of the case.  "Issues of statutory interpretation and application present questions of law."  *James v. Heinrich*, 2021 WI 58, ¶15, 397 Wis. 2d 517, 960 N.W.2d 350.

¶15     A beneficiary's claim against a trustee for breach of trust must be brought within one year of the date the beneficiary "was sent a report that adequately disclosed the existence of a potential claim for breach of trust."  WIS. STAT. § 701.1005(1).  "A report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or representative knows of the potential claim or should have inquired into its existence."  Sec. 701.1005(2).  A breach of trust occurs when a trustee violates "a duty the trustee owes to a beneficiary."  WIS. STAT. § 701.1001(1).  The duties a

trustee owes to a trust's beneficiaries are listed in WIS. STAT. §§ 701.0801-701.0813.[4]

¶16 Here, the Noziskas' breach of trust claim was based on allegations that Zimmerman violated his duties as trustee to: (1) inventory trust assets and account pursuant to WIS. STAT. § 701.0810; (2) collect trust property pursuant to WIS. STAT. § 701.0812; (3) control and protect trust property pursuant to WIS. STAT. § 701.0809; and (4) act impartially among trust beneficiaries pursuant to WIS. STAT. § 701.0803.

¶17 We conclude that Zimmerman's March 2017 letter constituted a report as defined under WIS. STAT. § 701.1005. That is, Zimmerman's March 2017 letter provided sufficient information for the Noziskas to know of potential claims under WIS. STAT. §§ 701.0803, 701.0809, 701.0810, and 701.0812, or, at the very least, provided sufficient information to alert them that they should have inquired further into the existence of such claims. In the letter, Zimmerman stated that he was not going to perform trustee duties other than what he had already completed, which was making an "[a]ssignment Separate from Certificate" that he provided to the Belize attorney and instructing her "to transfer the shares of these companies to the parties listed in the [a]ssignment." According to his letter, Zimmerman believed that "when [he] made that [a]ssignment, [he]

---

[4] Evidence in the record suggests that the trust at issue in this case was terminated in December 2013. Therefore, there is some question as to whether the Noziskas could each meet the definition of a "beneficiary" and, thus, whether Zimmerman's March 2017 letter could constitute a "report." *See* WIS. STAT. § 701.0103 (beneficiary means a person who has "a present or future beneficial interest in a trust"). Because the Noziskas do not raise this argument on appeal, we will assume without deciding that they each met the definition of a beneficiary in March 2017.

performed [his] duties as a [t]rustee and distributed to [Daniel], [William], and [Olmstead] the assets [they] were entitled to receive from the [t]rust."

¶18    As the circuit court stated, Zimmerman's March 2017 letter to the Noziskas "was responding to [the Noziskas'] prior correspondence in which they expected [Zimmerman] to distribute their interests under the trust and that they would take further action to redress the situation" if necessary.  We agree with the court that Zimmerman's letter

> clearly stated [his] position [as trustee] … that he did not intend to assist the beneficiaries further.… If it was not clear before this time, the [Noziskas] should have been on notice that Zimmerman was not going to take any more action on their behalf after receiving that letter.  Thus, their claim for breach of trust would have been ripe at that time.

As such, Zimmerman's letter—whether correctly or incorrectly identifying his duties as trustee—constituted a "report" as defined in WIS. STAT. § 701.1005(2).[5]

¶19    The Noziskas argue that Zimmerman never stated that he would not assist them further and, therefore, the March 2017 letter could not have been a report.  We disagree.  Although Zimmerman did state in the letter to call him if he

---

[5] On appeal, the Noziskas argue for the first time that Zimmerman's March 2017 letter could not be a "report" because the letter was "sent to only one of the two brothers."  Zimmerman contends that this argument was "waived" because it was not presented to the circuit court.  The Noziskas do not respond to Zimmerman's waiver argument.  Although the correct term is "forfeiture," *see State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that waiver and forfeiture are two distinct legal concepts), we agree that the Noziskas cannot now raise this argument, having failed to raise it before the circuit court.  *See Thompson v. Ouellette*, 2023 WI App 7, ¶13, 406 Wis. 2d 99, 986 N.W.2d 338.

Even so, it appears that the March 2017 letter was sufficiently sent to both brothers because the letter was in response to the March 15, 2017 letter from Daniel that used language indicating that the letter was from Daniel *and* William—that is, that Daniel represented both brothers' interests.  *See* WIS. STAT. § 701.1005(1).

could "provide further assistance," Zimmerman also expressly stated in the letter that he believed he completed his duties as trustee and explained why he believed that to be the case.   Furthermore, Zimmerman's communications with the Noziskas after the March 2017 letter were in response to the Noziskas' continued requests for information.  Zimmerman made it clear that he did not believe he was obligated as trustee to continue to help the Noziskas.  In fact, in his October 2017 email, he stated:

> While I am trying to help to get this resolved[,] I don't think Mr. Simek's estate/trust has an obligation to a potential beneficiary to get them financial information so they can make a decision whether to take a bequest or not. Seems like they should either take the bequest and then request financial information or decline the bequest entirely.

¶20    According to the Noziskas, the March 2017 letter did not disclose to them that Zimmerman "might allow the assets of [the entities] to be sold … when [he] was representing almost the precise opposite."[6]   They contend that their breach of trust claim was based on Zimmerman breaching "his duties by not completing the transfer of shares before the other resort share owners sold off all the resort's value."   Stated differently, according to the Noziskas, their petition alleged that Zimmerman "intentionally or negligently allowed for the Captain Morgan's entities in which the Noziskas were bequeathed an interest by the [t]rust to liquidate their assets and [Zimmerman] refused to take any action to investigate the sale or protect [their] interest in the proceeds."   According to the Noziskas, in

---

[6] The parties also argue on appeal as to whether the Noziskas' request to Zimmerman in 2019 to toll the statute of limitations for further investigation constituted evidence that the Noziskas had knowledge of a breach of trust claim at that time.  We need not address this issue, as we decide the appeal on narrower grounds.  *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707.

order for the March 2017 letter to have constituted a report, it would have had to disclose that "the assets of the [Noziskas'] interests ha[d] been sold and … state that those assets had value far above [Zimmerman's] assurances."[7]

¶21    The Noziskas raised this theory in the circuit court, but the court adopted Zimmerman's argument that the asset sale "would not have affected [the Noziskas'] knowledge of any alleged breach of trust.  It would have only increased the amount of damages that the [Noziskas] could claim.  The idea that the assets were sold does not change the initial claim that [Zimmerman] failed to properly distribute the assets …."

¶22    We again agree with the circuit court.  The disclosure of the asset sale in 2019 did not disclose a potential separate cause of action for breach of trust different from that disclosed in March 2017.[8]  Although the asset sale may have disclosed to the Noziskas the fact that the Captain Morgan's entities were actually

---

[7] In support of their argument on appeal that Zimmerman's March 2017 letter did not constitute a report, the Noziskas rely on *Mueller v. Krohn*, No. 2018AP25, unpublished slip op. (WI App July 17, 2019).  *Mueller* is an unpublished per curiam decision.  It therefore cannot be cited even for persuasive value.  *See* WIS. STAT. RULE 809.23(3)(b).

The Noziskas, like the circuit court, also rely on *Meyers v. First Tennessee Bank, N.A.*, 503 S.W.3d 365 (Tenn. Ct. App. 2016).  Although *Meyers* analyzed a similar statutory provision to the one at issue here, we do not find *Meyers* persuasive, given that it is a case from outside our jurisdiction and that the facts were substantially different from those presented here.  *See id.* at 384 (trustee's letter to beneficiaries gave "point-by-point assurances" that no breach of trust had occurred).

[8] The Noziskas argue that WIS. STAT. § 701.1005 "does not state that the disclosure of one breach of trust commences the limitation period on any breach of trust."  Because we conclude that the 2019 disclosure of the asset sale was not an independent claim from the claim disclosed in March 2017, we need not answer the question of whether the statute of limitations under § 701.1005 begins to run only once a specific breach of trust claim identified in a petition (as opposed to any claim for breach of trust) is disclosed.  *See Patrick Fur Farm*, 286 Wis. 2d 774, ¶8 n.1.

worth more than Zimmerman had estimated, the Noziskas' breach of trust claim was based on the allegation that Zimmerman did not take sufficient action to protect the Noziskas' interests. Again, it was Zimmerman's clearly stated position in the March 2017 letter that he had performed all of his duties as trustee. He was not informing the Noziskas that the interests in the Captain Morgan's entities would not be sold. In fact, he "highly recommend[ed]" to the Noziskas that they take ownership of the interests so that they would be considered shareholders and could demand information from Olmstead.

¶23    Similarly, the fact that the asset sale disclosed "two *new* entities" not previously disclosed to the Noziskas does not alter our conclusion. The Noziskas were previously made aware that the trust bequeathed to them interests in an entity that likely did not exist. To resolve this issue, Zimmerman gave the Noziskas interests in other entities. As the Noziskas claim, they did not sign the transfer documents in May 2016 because there were discrepancies with the names of the entities and improper share allocations. Therefore, the Noziskas—in March 2017—believed that there were issues with the Captain Morgan's entities' names and knew that Zimmerman believed he had performed his duties as trustee. These facts did not change once the asset sale was disclosed in 2019. Accordingly, the March 2017 letter "adequately disclosed the existence of a potential claim for breach of trust"—that is, that Zimmerman was not going to take any further action as trustee. *See* WIS. STAT. § 701.1005(1).

¶24    Lastly, the Noziskas contend that the circuit court erred in granting summary judgment because competing inferences can be drawn from the March 2017 letter and because "a genuine issue of material fact exists as to whether the Noziskas received a report." In support of these arguments, the Noziskas essentially rehash their arguments discussed above and add that

inferences from the record must be viewed in their favor as the nonmoving party. For example, they argue that the March 2017 letter *could* be seen as an offer by Zimmerman to continue working as trustee for their benefit. For the reasons discussed previously, we conclude there is only one reasonable inference from the March 2017 letter—that Zimmerman gave notice to the Noziskas that he believed he had completed his duties as trustee. Consequently, we agree with the circuit court that the March 2017 letter constituted a report as a matter of law.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.